**Terri E. BREWER, Plaintiff,**

v.

**State of ALABAMA, et al., Defendants.**

**No. Civ.A. 98–D–1338–N.**

United States District Court,
M.D. Alabama,
Northern Division.

June 8, 2000.

---

Gary E. Atchison, Montgomery, AL, David E. Belser, Nabors & Belser, LLC, Montgomery, AL, T. Dudley Perry, Jr., Alabama Dept. of Transp. Legal Division, Montgomery, AL, for plaintiff.

Margaret L. Fleming, Margaret L. Fleming, Office of the Attorney General, Montgomery, AL, Courtney Wayne Tarver, Dept. of Mental Health & Mental Retardation Bureau of Legal Services, for defendant.

## MEMORANDUM OPINION

DE MENT, District Judge.

Before the court is Defendants State of Alabama and Alabama Department of Youth Services' ("State" and "DYS," individually, or "Defendants," collectively) Motion For Summary Judgment ("Mot."), together with a Brief In Support ("Br."), both filed March 23, 2000. On April 24, 2000, Plaintiff Terri E. Brewer ("Plaintiff") filed a Memorandum In Support Of Denial Of Defendants' Motion For Summary Judgment, which the court construes as a Response ("Resp."). Defendants filed a Reply on April 27, 2000. Both Parties have filed evidence in support of their respective positions. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendants' Motion For Summary Judgment is due to be granted.

## I. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 42 U.S.C. §§ 12101, *et seq.* (Americans with Disabilities Act of 1990 ("ADA")), 28 U.S.C. § 1343 (civil rights), and 42 U.S.C. §§ 2000e to 2000e–17 (Title VII of the Civil Rights Act of 1964, as amended) ("Title VII"). The Parties do not contest personal jurisdiction or venue.

## II. SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c) As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing FED.R.CIV.P. 56(c)).

The trial court's function at this juncture is *not* "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact

and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548 (citing FED. R.CIV.P. 56(c)). The mechanics of satisfying the initial burden vary, however, depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the nature of the parties' responsibilities when preparing or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (citing FED.R.CIV.P. 56(e)). In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." FED.R.CIV.P. 56(e); *see also Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

## III. FACTUAL BACKGROUND[1]

On August 22, 1988, Plaintiff began working as a psychologist for DYS, an agency of the State. (Pl.Aff. at 1; Pl.

EEOC Aff. at 1.[2]) "[A]t all material times" to this litigation, Plaintiff's supervisor was Wayne Booker ("Booker"). Booker, in turn, worked under the direction of James Dupree, Jr. ("Dupree"), the Director of DYS. (Pl.Aff. at 1.)

Under the State "merit system classification," Plaintiff was hired as a Psychologist III and, in 1992, received a promotion to the position of Senior Psychologist. (Dupree Aff. at 1; Pl.Aff. at 1.) As a licensed Senior Psychologist, Plaintiff "was responsible for providing DYS with clinical psychological services . . . , such as emergency evaluation of suicidal children." (Dupree Aff. at 1.) Additionally, "[t]he duties of the Senior Psychologist included coordinating the prompt admission of DYS children to appropriate residential treatment facilities." (*Id.*)

Beginning in 1992, Plaintiff actively complained to Booker, Dupree and other DYS supervisory employees about discrimination in the workplace. For instance, Plaintiff voiced her concerns about a pay disparity between her and a male colleague. As explained by Plaintiff, in 1992, "another psychologist[,] Dr. John R. Cook, a male, was employed and paid higher initial pay than [she] was paid even though he was hired as an unlicenced psychologist and had less experience and was supervised by [Plaintiff], etc." (Pl.Aff. at 1; Pl. EEOC Aff. at 1.) Believing that she was paid less than Cook because she was female, Plaintiff retained counsel "and brought the Cook pay differential matter to the attention of" DYS. (Pl.Aff. at 1.) Specifically, Plaintiff "alleg[ed] sex discrimination both by person and by [counsel's] letter [to Dupree] dated April 18, 1994." (*Id.*)

---

1. In ruling on the Defendants' Motion For Summary Judgment, the court has carefully examined all submissions by the Parties and has construed them in the light most favorable to Plaintiff, the non-moving party. *See Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir.1992).

2. Plaintiff has filed two Affidavits with the court. One Affidavit is attached to Plaintiff's charge of discrimination filed the Equal Employment Opportunity Commission ("EEOC"), and the court refers to this Affidavit as "Pl. EEOC Aff." Plaintiff submitted the second Affidavit as evidence opposing Defendants' Motion For Summary Judgment. The court refers to the latter Affidavit as "Pl.Aff."

As a result of Plaintiff's complaints, Defendants, primarily through Dupree, engaged in "more and more discrimination and retaliation" against Plaintiff. (*Id.* at 1–2; Pl. EEOC Aff. at 1.) For example, in August 1995, Plaintiff was "systematically relieved of supervisory and administrative functions and [was] not allowed to perform the tasks of [her] classification as Senior Psychologist." (Pl.Aff. at 2; Pl. EEOC Aff. at 2.) Also, Plaintiff received lower performance evaluations after she began protesting the pay disparity. (*Id.*)

The discrimination and retaliation heightened when, in 1996, Plaintiff "became an advocate for a handicapped co-worker named John Johnson" ("Johnson"). (Pl.Aff. at 2.) Plaintiff's "advocacy for the handicap rights of [ ] Johnson were [sic] well known to both ... Booker and ... Dupree" and was not well received. (*Id.*; Pl. EEOC Aff. at 2–3.) Booker once "shouted" at Plaintiff for "standing up" for Johnson's "rights as a disabled employee" and "threatened to 'get rid' of" both Plaintiff and Johnson. (Pl.Aff. at 2.) When Plaintiff complained to Dupree about Booker's "threatening comments," Dupree "laughed" and "did nothing to put [her] at ease." (*Id.*) Thus, Plaintiff "wrote a memo" to Booker "about the threat to terminate [her]" and forwarded copies to Dupree and her retained counsel. (*Id.*)

Further, Plaintiff asserts that Dupree is a "sexist" and, during her tenure with DYS, made "inappropriate" comments to and about women. (*Id.*) For example, when Plaintiff recommended that Dupree hire one of the female applicants for the position of Psychological Associate I, Dupree told her that "he would not hire a woman."[3] (*Id.* at 3.) Also, Plaintiff submitted an Affidavit from a DYS employee, Sharon Caldwell ("Caldwell"), who attests that in 1995 Dupree made a similar comment when Caldwell recommended a female for a "case manager" position. (Caldwell Aff. at 1; Pl.Aff. at 3.)

On another occasion in the "spring of 1996," Plaintiff told Dupree about a project she was completing and which required her to work overtime. (Pl.Aff. at 3.) Dupree replied that Plaintiff's "husband would be pleased that D.Y.S. is keeping [her] busy since he was out of town." (*Id.*) Plaintiff "was offended by this remark by Dupree and felt it was a comment of clear sexual innuendo and was inappropriate." (*Id.*)

In sum, Plaintiff contends that, because she is female and voiced complaints about conditions she believed constituted sex and disability discrimination, Defendants discriminated and retaliated against her in violation of Title VII and the ADA. As a result of Defendants' alleged discrimination and retaliation, Plaintiff's work conditions "grew so bad and intolerable that, on August 30, 1996, [Plaintiff] tendered [her] written resignation to [ ] Booker." (*Id.* at 3; Pl. EEOC Aff. at 3.) In her resignation, Plaintiff designated her "last day" of work as September 20, 1996. (Resp., Ex. 3.) Plaintiff gave her resignation letter to Booker, who "gleefully" accepted the resignation and inquired whether Plaintiff was "taking" Johnson with her. (Pl. EEOC Aff. at 3.)

However, on September 5, 1996, Plaintiff asked Booker if she could change her resignation date to December 13, 1996, and remain on "leave" until that date. (Pl.Aff. at 3–4; Pl. EEOC Aff. at 3; Resp., Ex. 4.) Plaintiff requested the change in order to extend her State insurance coverage and based upon her concern that she may "lose considerable leave time." (Pl.Aff. at 3; Resp., Ex. 4.) Booker orally approved her request. In a memorandum to Booker dated September 5, 1996, Plaintiff stated as follows:

> Per our conversation this morning, you confirmed that you would approve rescinding my resignation date of September 20th. I am requesting leave beginning September 23, 1996. My accrued annual leave will end December 12, 1996, so my last working day will be Friday, December 13, 1996.

3. The court notes that Plaintiff did not indicate the date of this alleged incident.

Thank you for allowing this provision so that I may be covered by Blue Cross/Blue Shield during this transition.

(Resp., Ex. 4.)

Handwritten on Plaintiff's memorandum is a notation, signed by Booker and dated September 5, 1996, indicating that Booker "approved" Plaintiff's request. (*Id.*) However, Plaintiff's memorandum contains a second handwritten notation initialed by Lei Taylor ("Taylor"), DYS's personnel manager, and dated September 6, 1996. Taylor's notation states that Booker's approval is "voided" by Dupree and that, per Dupree, Plaintiff's resignation was "to remain effective 9–20–96." (*Id.*)

Further, in a letter to Plaintiff dated September 5, 1996, Dupree wrote as follows:

I am in receipt of your correspondence dated 8–30–96 advising of your resignatiõn to be effective 9–20–96. I have accepted that resignation.

In accordance with usual custom, you will be paid for your accrued annual leave after your departure.

Your medical insurance will remain in effect through September, 1996. If you wish to retain that insurance coverage for a longer period of time, you have the option of doing so at your own expense. . . .

I appreciate your years of service with DYS and I extend to you by [sic] best wishes in all your future endeavors.

(Resp., Ex. 5.)

Plaintiff received Dupree's letter on Saturday, September 7, 1996. (Pl.Aff. at 4; Pl. EEOC Aff. at 3.) Plaintiff assumed that Dupree was unaware that Booker had approved her request to change her resignation date to December 13, 1996. (Pl.'s Dep. at 213–214.) Thus, on Monday, September 9, 1996, Plaintiff notified Taylor that Booker had approved Plaintiff's request to extend her resignation date to December 13, 1996. Taylor responded that Dupree was aware of Plaintiff's request and Booker's approval, but that Dupree had "overruled" Booker and denied her request. (Pl.'s Dep. at 214; Pl. EEOC Aff. at 3.)

On September 10, 1996, Plaintiff called and spoke to Dupree. (Pl. EEOC Aff. at 3–4.) Plaintiff "asked to rescind [her] resignation completely without any leave or future resignation date." (Pl. EEOC Aff. at 4.) Dupree replied "that he considered resignation to be a serious gesture and that he was already working on [her] replacement." (*Id.*) Dupree told Plaintiff, "[Y]ou can't rescind," (Pl.'s Dep. at 215), and required Plaintiff to resign on September 20, 1996, as she had originally indicated in her August 30, 1996 resignation letter. (Dupree Aff. at 2.) "[O]n several occasions" between September 10, 1996 and September 20, 1996, Plaintiff "made it clearly known to [DYS] management that [she] wanted to continue employment." (Pl.Aff. at 4.) However, Plaintiff's last day of work with DYS was September 20, 1996.

On November 20, 1996, "[d]ue to [her] increasing and foreseeable need for financial security, need for health insurance, etc.," Plaintiff "reapplied" for her old position of Senior Psychologist. (Pl.Aff. at 5; Pl. EEOC Aff. at 4.) However, Plaintiff "received no response to [her] reapplication." According to Plaintiff, in January 1997, DYS "replaced [her] position" with a male psychologist. (Pl.Aff. at 4–5; Pl. EEOC Aff. at 4.)

On March 12, 1997, Plaintiff filed a charge of discrimination with the EEOC against her employer, DYS. After receiving a right-to-sue notice from the EEOC, Plaintiff timely commenced her action by filing a Complaint in this court on December 2, 1998.

In her Complaint, Plaintiff names as Defendants the State and DYS. Plaintiff's Complaint contains 20 narrative paragraphs in the "Facts" section, followed by five counts. Plaintiff labels her five counts as follows: "Title VII" (Count 1); "First Amendment" (Count 2); "Americans With Disabilities Act" (Count 3); "42 U.S.C.

§ 1983" (Count 4); and "Breach of Contract" (Count 5).

In an Order entered on January 6, 2000, the court granted Defendants' Motion To Dismiss Counts 2, 4 and 5. Thus, only Counts 1 and 3 remain in this action.

Counts 1 and 3 incorporate by reference all the narrative paragraphs in the "Facts" section of Plaintiff's Complaint, thus, making it difficult to ascertain which theories and factual allegations support her Title VII and ADA claims. In her Response to Defendants' Motion For Summary Judgment, however, Plaintiff seeks to clarify that her theories of liability are "constructive discharge on or subsequent to September 20, 1996" and "failure to rehire . . . subsequent to September 20, 1996." (Resp. at 5.) Further, Plaintiff asserts that her constructive discharge and failure-to-rehire theories "are based upon Title VII claims of sex discrimination and retaliation and the ADA retaliation allegations of [P]laintiff."[4] (*Id.*)

## IV. DISCUSSION

Based upon Plaintiff's representations in her Response (Resp. at 5) and a liberal construction of the allegations in her Complaint, the court finds that Plaintiff seeks to litigate and properly alleges the following four claims: (1) a Title VII sex-based constructive discharge claim; (2) a Title VII sex-based failure-to-rehire claim; (3) a Title VII retaliation claim; and (4) an ADA retaliation claim.[5]

Defendants contend that they are entitled to summary judgment on all of Plaintiff's claims. Defendants raise several grounds in support of their Motion For Summary Judgment. Among these grounds, Defendants assert that Plaintiff failed to timely file her EEOC charge within 180 days of the alleged acts of discrimination, as required under Title VII and the ADA. (Br. at 3; Reply at 2.)

For the reasons stated herein, the court agrees with Defendants and finds that Plaintiff's claims are time barred for failure of Plaintiff to exhaust her administrative remedies.[6] In the following sections, the court sets forth the law applicable in this action and then addresses the timeliness of each of Plaintiff's four claims.

### A. The Applicable Law

#### 1. Title VII and the ADA

Invoking the provisions of Title VII and the ADA, Plaintiff sets forth four claims. Plaintiff brings her constructive discharge and failure-to-rehire claims under Title VII's mandate that an employer not "discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). Additionally, Plaintiff raises a claim under Title VII's anti-retaliation provision, which provides, in part, that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his [or her] employees . . . because he [or she] has opposed any practice made an unlawful employment practice by [Title VII.]" 42 U.S.C. § 2000e–3(a).

Finally, Plaintiff raises a retaliation claim under the ADA. Like Title VII, the ADA contains an anti-retaliation provision,

---

**4.** Also, in her Response, Plaintiff "stipulates" that "she makes no claims for relief as to (1) 'sexually hostile working environment' and (2) 'claims that Dr. Cook, a male psychologist was given a higher salary than she.'" (Resp. at 4, quoting Br. at 1–2.)

**5.** In finding that Plaintiff has alleged the above four claims, the court liberally construes Plaintiff's allegations in her Complaint "for the furtherance of justice" and to facilitate a just decision in this case. *United States v. Parker*, 120 U.S. 89, 94, 7 S.Ct. 454, 30

L.Ed. 601 (1887); *see* FED.R.CIV.P. 8(f) (stating that "[a]ll pleadings shall be so construed as to do substantial justice").

**6.** As noted above, Defendants assert additional arguments in support of their Motion For Summary Judgment. However, because the court finds that Defendants' ground attacking the timeliness of Plaintiff's EEOC charge is dispositive, the court declines to express an opinion on any of the remaining arguments proffered by Defendants.

which prohibits an employer from discriminating against an employee "because such individual has opposed any act or practice made unlawful by [the ADA]. . . ." 42 U.S.C. § 12203(a). The ADA deems "unlawful" any actions by an employer, which result in discrimination against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). While Plaintiff does not claim to have a "disability" under the terms of the ADA, she avers that she opposed Defendants' alleged discrimination against her disabled co-worker, Johnson.

### 2. Title VII And The ADA's Filing Requirement

Filing an administrative charge of discrimination with the EEOC is a prerequisite to a private civil action brought pursuant to the provisions of Title VII and the ADA. Under Title VII, an employee is required to file a charge of discrimination with the EEOC within 180 days of the alleged act of discrimination. *See* 42 U.S.C. § 2000e–5(e). The ADA has incorporated Title VII's administrative filing requirements. *See* 42 U.S.C. § 12117(a). Thus, the administrative filing requirements are the same for claims brought under Title VII and the ADA.

 If an employee fails to file an EEOC charge before the 180-day limitations period elapses, his or her subsequent lawsuit is procedurally barred and must be dismissed for failure to exhaust his or her administrative remedies. *See Delaware State College v. Ricks,* 449 U.S. 250, 256, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Everett v. Cobb County Sch. Dist.,* 138 F.3d 1407, 1410 (11th Cir.1998). However, the filing of a timely EEOC charge is "a requirement that, like a statute of limitation, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). For example, an ex-

ception to the 180-day filing requirement arises where the discriminatory acts constitute a "continuing violation." *Patterson v. Augat Wiring Sys., Inc.,* 944 F.Supp. 1509, 1517 (M.D.Ala.1996) (citing *Calloway v. Partners Nat'l Health Plans,* 986 F.2d 446, 449 (11th Cir.1993)). Under the continuing violation doctrine, "[w]here an employee charges an employer with continuously maintaining an illegal employment practice, he [or she] may file a valid charge of discrimination based upon that illegal practice until 180 days after the last occurrence of an instance of that practice." *Beavers v. American Cast Iron Pipe Co.,* 975 F.2d 792, 796 (11th Cir.1992).

### B. Plaintiff's Title VII Constructive Discharge Claim

On Plaintiff's Title VII constructive discharge claim, Defendants argue that the 180 days began to run on August 30, 1996, the date "Plaintiff submitted her resignation." (Br. at 18; Reply at 2.) Thus, Defendants contend that "[t]he last date on which the plaintiff could file her EEOC charge was . . . February 26, 1997." (Br. at 18.) Because Plaintiff did not file her EEOC charge until March 12, 1997, Defendants assert that her EEOC charge is "untimely." (*Id.*) Accordingly, Defendants urge the court to grant summary judgment in their favor on the ground that Plaintiff is procedurally barred from raising a constructive discharge claim in her Complaint.

However, Plaintiff argues that the limitations period did not begin to run until the last day of her employment, i.e., September 20, 1996, a date that brings her constructive discharge claim within the 180-day filing period. Plaintiff asserts that, contrary to Defendants' assertion, her constructive discharge claim did not begin to accrue on the date she submitted her resignation because Plaintiff "rescinded" that resignation on September 5, 1996. (Resp. at 5–6.)

According to Plaintiff, Dupree did not have the authority to block her decision to

rescind her resignation. Namely, Plaintiff argues that, as a merit system employee, she had a legal right to rescind her resignation any time prior to September 7, 1996, the date she received notice from Dupree that he had accepted her resignation. (*Id.* at 6–7.) Thus, Plaintiff contends that Dupree's action requiring Plaintiff to resign no later than September 20, 1996, the date she designated as her last day of employment in her August 30, 1996 resignation letter, is null and void. Accordingly, Plaintiff asserts that she "legally" remained a DYS employee on September 20, 1996, and had the option to continue working with DYS past that date. (*Id.* at 6.) However, Plaintiff avers that Dupree "intentionally continued up to September 20, 1996, to create an intolerable work environment for [ ][P]laintiff," which "forced her from her job." (*Id.*) Therefore, under a continuing violation theory, Plaintiff contends that September 20, 1996, is the appropriate date for beginning the 180–day count.[7] For the reasons that follow, the court disagrees with Plaintiff and finds that her constructive discharge claim is untimely.

■ The limitations period begins to run when an employee receives notice of the alleged discriminatory act, "not the point at which the consequences of the act become painful." *Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (holding that the plaintiff's employment discrimination claim accrued when "the operative decision was made—and notice given—in advance of a designated date on which employment terminated"); *see also Ricks,* 449 U.S. at 258, 101 S.Ct. 498 (holding that the limitations period commenced on the date the adverse employment decision was made and communicated to the plaintiff, even though one of the effects of the decision did not occur until later); *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1100, n. 19 (11th Cir.1996) ("[T]he time for filing an EEOC charge begins to run when the employee receives unequivo-

cal notice of the adverse employment decision."). In holding that the triggering event for limitations purposes is the employer's notice to the employee of the adverse employment decision, the Supreme Court explained that the act of termination is not itself illegal. *See Ricks,* 449 U.S. at 258–59, 101 S.Ct. 498. Rather, the illegal act is the improper motive in the employment decision itself. *Id.*

■ Applying the foregoing principles, the court finds that the 180–day period in which Plaintiff was required to file an EEOC charge began to run on the date Plaintiff received unequivocal notification of the adverse employment decision about which she is complaining. Giving Plaintiff all benefit of the doubt, the court finds that the latest date upon which Plaintiff's constructive discharge claim accrued is September 10, 1996, the date Dupree informed Plaintiff that she would have to resign by September 20, 1996.

By her own admissions, Plaintiff definitively knew no later than September 10, 1996, that Dupree would not allow her to rescind her resignation. (Pl.'s EEOC Aff. at 4–5; Pl.'s Dep. at 213–15.) Assuming, without deciding, that Plaintiff was legally entitled to withdraw her resignation, as she alleges, the court finds that Dupree effectively fired and/or forced Plaintiff to resign by refusing to allow her to rescind her resignation. In other words, the court finds that the alleged illegal act was Dupree's decision, unequivocally communicated to Plaintiff on September 10, 1996, that Plaintiff would be resigning no later than September 20, 1996.

As stated previously, Plaintiff seeks to extend the date the limitations period commenced under a continuing violation theory by arguing that the discrimination continued until September 20, 1996. For two reasons, the court finds Plaintiff's argument unavailing. First, the court has combed the record in this case, and Plain-

---

**7.** In finding that Plaintiff raises the continuing violation doctrine, the court liberally construes Plaintiff's argument and factual allegations, despite Plaintiff's failure to explicitly reference said doctrine.

tiff has not set forth any evidence or a single example of a discriminatory act occurring after September 10, 1996. On a motion for summary judgment, Plaintiff's conclusory allegation that an "intolerable work environment" continued through September 10, 1996 is insufficient to invoke a continuing violation theory. *See Bennett v. Parker,* 898 F.2d 1530, 1533–34 (11th Cir.1990) (A "conclusory allegation" cannot defeat a motion for summary judgment.).

Second, Plaintiff's argument is unpersuasive based upon the Eleventh Circuit's decision in *Calhoun v. Federal Nat'l Mortgage Assoc.,* 823 F.2d 451, 455 (11th Cir. 1987). In *Calhoun,* the Eleventh Circuit rejected the plaintiff's argument that the continuing violation theory saved his otherwise time-barred termination claim because the employer's discrimination continued from the date the plaintiff was notified of his termination until the last date of the plaintiff's employment. *Id.* In disagreeing with the plaintiff, the Eleventh Circuit emphasized the fact that, after giving notice to the plaintiff, the employer "did not deviate from its expressed intention to terminate [the plaintiff]." *Id.* In concluding that the plaintiff failed to timely file his EEOC charge, the Eleventh Circuit held that the 180 days commenced from the date of notice of termination and that the plaintiff's allegation of a continuing violation did not revive his claim:

> The alleged illegal acts ... were the decision to terminate and the notice of that decision to [the plaintiff]. It is clear from the record that [the plaintiff] received unequivocal notice on July 22 and August 4, 1982 of [his employer's] intention to remove him as Regional Counsel and to terminate his employment on August 5, 1983. [The employer] never waivered from this position.

*Id.* at 455–56.

Likewise, in this case, from September 10, 1996 until September 20, 1996, Dupree did not diverge from or reconsider his decision that Plaintiff had to resign by September 20, 1996. Plaintiff received un-

equivocal notice on September 10, 1996 that she would have to resign by September 20, 1996, and that decision never changed. In short, the court finds that, here, the specific facts do not give rise to a continuing violation. Thus, the continuing violation theory does not extend the running of the 180–day limitations period in this action.

Based on the foregoing, the court finds that, on September 10, 1996, Plaintiff knew of the alleged unlawful discriminatory act and knew all of the facts necessary to her case. Thus, the 180 days began to run on September 10, 1996, and expired on March 9, 1997. Because Plaintiff did not file her EEOC charge until March 12, 1997, the court finds that Plaintiff's Title VII constructive discharge claim is untimely. Accordingly, summary judgment is due to be entered in favor of Defendants on Plaintiff's Title VII constructive discharge claim.

### C. Plaintiff's Title VII Failure–To–Rehire Claim

Defendants contend that Plaintiff's Title VII failure-to-rehire claim is an impermissible attempt by Plaintiff to "revive her time-barred claim of constructive discharge." (Br. at 18.) Relying on *Burnam v. Amoco Container Co.,* 755 F.2d 893 (11th Cir.1985), Defendants assert that, in order to start anew the running of the 180 days, Plaintiff must offer "evidence of a new and discrete act of discrimination." (Reply at 7–8.) Defendants argue that Plaintiff has not demonstrated that her failure-to-rehire claim derives from an act of discrimination separate from her constructive discharge claim. (*Id.*) Therefore, Defendants take the position that Plaintiff's failure-to-rehire claim, in effect, merges with the constructive discharge claim. Consequently, Defendants aver that the 180–day limitations period on Plaintiff's failure-to-rehire claim commenced on the same date the limitations period began to run on her constructive discharge claim. (*Id.*)

In response, Plaintiff does not address Defendants' argument or attempt to distinguish *Burnam, supra.* Plaintiff merely recites that, within 180 days of filing her EEOC charge, Plaintiff requested to be rehired for her prior position, but her application was not considered. (Resp. at 7–8.) For the following reasons, the court agrees with Defendants.

In *Burnam,* the plaintiff was "discharged" from her employment and, in an EEOC charge, challenged her discharge as discriminatory. *See* 755 F.2d at 894. However, the plaintiff did not file her EEOC charge within 180 days of her discharge. The plaintiff argued that, even if her discharge claim was untimely, her employer engaged in further discrimination by refusing to rehire her for the same position. Because the employer's refusal to rehire occurred within the 180–day limitations period, the plaintiff asserted that her failure-to-rehire claim was timely and, thus, properly before the court. *Id.*

The Eleventh Circuit, however, did not allow the plaintiff's claim for refusal to rehire, holding that "a failure to rehire subsequent to an allegedly discriminatory firing, absent a new and discrete act of discrimination in the refusal to rehire itself, cannot resurrect the old discriminatory act." *Id.* "Otherwise," the Court reasoned, "a potential plaintiff could always circumvent the limitation by reapplying for employment." *Id.*

■ Thus, under *Burnam,* the relevant inquiry is whether Plaintiff has submitted evidence of a "new and discrete act of discrimination" when Defendants failed to rehire her to her former position. *Id.* Here, three core facts form the basis of both Plaintiff's Title VII claims for constructive discharge and failure-to-rehire. First, Plaintiff alleges that Defendants constructively discharged her and then failed to rehire her because she is female. Second, Dupree was the decision maker who forced Plaintiff to resign and who, according to Plaintiff, refused to rehire her. Third, Plaintiff requested reinstatement to the same position she previously held. Plaintiff has not offered any evidence that the circumstances were different when Plaintiff re-applied for her former position. In fact, the circumstances were the same.

After reviewing the record in its entirety, the court finds that there were no new facts existing at the time Plaintiff was denied re-employment which would render the denial a new and discrete discriminatory act. *Id.; see also Lever v. Northwestern Univ.,* 979 F.2d 552, 556 (7th Cir.1992) (stating that "[a]n employer's refusal to undo a discriminatory decision is not a fresh act of discrimination"). Just as in *Burnam,* the court finds that Plaintiff's failure-to-rehire claim is merely an attempt to redress—or restate—the original time-barred constructive discharge claim. In other words, in seeking to be reinstated to her former position, Plaintiff is really litigating the unfairness of her original discharge. Thus, the court finds that, by reapplying, Plaintiff did not resurrect the initial discriminatory act nor trigger a new limitations period. The relevant discriminatory act remains Dupree's decision to require Plaintiff to resign on September 20, 1996.

In sum, the court finds that there exists no evidence to support Plaintiff's claim that Defendants' refusal to rehire Plaintiff was a new and discrete discriminatory act. As such, Plaintiff's failure-to-rehire claim is, in effect, subsumed into her constructive discharge claim and is likewise time barred. Accordingly, Defendants' Motion For Summary Judgment on Plaintiff's Title VII failure-to-rehire claim is due to be granted.

### D. Plaintiff's ADA And Title VII Retaliation Claims

Again, Defendants assert that Plaintiff's Title VII and ADA retaliation claims are "time-barred" for failure of Plaintiff to exhaust her administrative remedies. (Br. at 18, 23; Reply at 3–5.) Plaintiff has not advanced any new arguments as to why her retaliation claims are timely. For the

following reasons, the court agrees with Defendants.

 On her retaliation claims brought under Title VII and the ADA, Plaintiff had a maximum of 180 days from the occurrence of the alleged retaliatory acts to file a charge with the EEOC. *See* 42 U.S.C. § 2000e–5(e); 42 U.S.C. § 12117(a). In alleging retaliation claims, Plaintiff asserts that Defendants constructively discharged her and then failed to rehire her in retaliation for her "prior complaints" that Defendants discriminated against their employees on the basis of sex and disability, in violation of Title VII and the ADA. (Pl.Aff. at 5; Pl. EEOC Aff. at 3; Resp. at 5.) Thus, the alleged retaliatory acts are Defendants' purported constructive discharge of Plaintiff and Defendants' subsequent failure to rehire her as a Senior Psychologist.

In the preceding sections, i.e., IV.B and IV.C, the court addressed and found untimely Plaintiff's constructive discharge and failure-to-rehire allegations. These latter two allegations form the basis of Plaintiff's retaliation claims and fail under the same reasoning discussed previously.[8] Plaintiff has not presented any argument or proffered evidence that would warrant tolling or otherwise extend the filing period. *See Zipes*, 455 U.S. at 393, 102 S.Ct. 1127. Because the retaliatory acts are not timely, Plaintiff's retaliation claims cannot survive summary judgment for failure of Plaintiff to timely exhaust her administrative remedies. Accordingly, the court finds that summary judgment is due to be granted in favor of Defendants on Plaintiff's retaliation claims brought under Title VII and the ADA.

---

8. The court notes that Plaintiff's argument that Defendants' refusal to rehire her constitutes a timely act of retaliation fails under the holding in *Burnam*, 755 F.2d at 894, discussed in Section IV.C, *supra*. The conduct that forms the basis of Plaintiff's retaliation claims that Defendants constructively discharged her and then failed to rehire her is identical. Namely, Plaintiff contends that both acts of retaliation occurred because, during her employment, Plaintiff complained that

## V. CONCLUSION

Based on the foregoing, it is CONSIDERED and ORDERED that Defendants' Motion For Summary Judgment be and the same is hereby GRANTED. A judgment in accordance with this Memorandum Opinion shall be entered separately.

Defendants engaged in sex and disability discrimination. Plaintiff has alleged no new facts to support her retaliation claim in Defendants' failure to rehire her. Thus, the court finds that, in alleging a retaliation claim based upon Defendants' refusal to rehire her, Plaintiff has not alleged "a new and discrete act" of retaliation. Thus, said claim cannot "resurrect" her time-barred retaliation claim based upon Defendants' constructive discharge. *Burnam*, 755 F.2d at 894.