**Kathy Jeanette CANTRELL, Plaintiff,**

v.

**JAY R. SMITH MFG.CO., Defendant.**

**No. CIV.A. 01–F–1420–N.**

United States District Court,
M.D. Alabama,
Northern Division.

March 3, 2003.

Kathy Jeanette Cantrell, Deatsville, AL, Pro se.

Joseph (Jay) Brady Lewis, Eileen L. Harris, The Law Office of Jay Lewis, Montgomery, AL, David R. Arendall, Stephanie S. Woodard, Arendall & Associates, Birmingham, AL, for Plaintiff.

Frederick L. Warren, Ford & Harrison, Atlanta, GA, S. Andrew Scharfenberg, John A. Lambremont, Ford & Harrison LLP, Birmingham, AL, for Defendant.

## MEMORANDUM OPINION AND ORDER

FULLER, District Judge.

Plaintiff, Kathy Jeanette Cantrell, filed a Complaint (Doc. # 1) on December 4, 2001, bringing claims of gender discrimination and retaliation pursuant to Title VII, 42 U.S.C. § 2000e, *et seq* ("Title VII"). On January 2, 2002, Defendant, Jay R. Smith Manufacturing Company (hereinafter "Company"), filed an Answer (Doc. # 4).

This action is presently before the court on the motion for summary judgment filed by the defendant on December 9, 2002 (Doc. # 21). After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court concludes that the motion is due to be GRANTED.

## I. FACTS[1] AND PROCEDURAL HISTORY

### A. Employment Background

On June 8, 1981, shortly after graduating from high school, Plaintiff began her employment with the Company in the position of a clerk (Cantrell Dep., pp. 18–19). In 1988, Plaintiff was promoted to the

---

1. This recitation of "facts" is based upon ma- terials presented by the parties, viewed in the

position of Inventory Analyst in the Inventory Control Department. From 1990 to 1995, her direct supervisor was Steve Chromey[2] (hereinafter "Chromey").[3]

In 1995, Plaintiff was promoted to the position of Marketing Assistant in the Marketing Department. Her direct supervisor was Bruce Smith[4] (hereinafter "Smith"), until he left the Company in the spring of 2000. Shortly after Smith's departure from the Company, an assistant in the department, Becky McDanal, departed from the Company. Those departures left Mario Stan[5] (hereinafter "Stan") as the only full-time Marketing employee, and Plaintiff as the only female Marketing employee.

After Smith's departure, Chromey assumed Smith's duties on an interim basis in addition to his other duties. Subsequently, Chromey selected Charles White[6] (hereinafter "White") as the new Marketing Manager to replace Smith effective June 1, 2000.[7]

In March 2000, Plaintiff took a leave of absence for a pregnancy.[8] During her leave of absence, White invited Plaintiff to attend regular departmental meetings that were scheduled during her absence. Plaintiff, however, did not attend any of the meetings.

### B. Alleged Acts of Discrimination and Retaliation

According to Plaintiff, prior to March 2000, she held the title of Marketing Specialist and worked on marketing projects such as product research and evaluation, market research, and trade shows. In addition, she prepared financial reports and accomplished other administrative functions for the Marketing Department. However, according to Plaintiff and as discussed below, when she returned from her leave of absence at the end of July 2000, she found that her job title and responsibilities had substantially changed.[9]

---

light most favorable to the plaintiff.

2. Plaintiff testified that she believes that Chromey was a fair supervisor (Cantrell Dep., pp. 20–21).

3. Chromey is currently the Company's Senior Vice President and General Manager.

4. Plaintiff testified that she believes that Smith was a fair supervisor (Cantrell Dep., p. 22).

5. In June 1998, Chromey and Smith recruited and hired Stan as a Marketing Analyst in an effort to enhance the Company's marketing function. Plaintiff and Stan were co-workers and, for two years, both reported directly to Smith.

6. White joined the Company in 1986 as Payable Supervisor. In 1989, White joined the Marketing Department. He worked with Smith in Marketing for six years (1989–1995). In 1995, White was promoted to the position of Manager Sales Administration. As White was leaving Marketing, Plaintiff joined the Marketing Department. During this brief period of time, White assisted in training and orienting Plaintiff to her new position.

7. The evidence indicates that there had been some friction between White and the plaintiff prior to White's promotion. Chromey was aware of this friction and spoke with White, prior to his promotion, and told him that he expected White to try to make the situation work with Plaintiff despite their past differences. White agreed to do so. Chromey also met with Plaintiff and told her that he expected White, as the new Marketing Manager, to treat her fairly.

8. Plaintiff did not return to work until the end of July 2000.

9. When Plaintiff returned from her leave of absence, there were five persons in the Marketing Department, Scott Alexander (hereinafter "Alexander"), Kevin Jones (hereinafter "Jones"), Stan, White and Plaintiff. Jones held the position of Marketing Specialist and Alexander held the position of Web/Communication Editor. Plaintiff was still the only female in the Department.

Plaintiff avers that she was "stripped of [her] office, title, and many of [her] previous functions" (Cantrell Aff.). Plaintiff asserts that she no longer had the title of Marketing Specialist, but instead, had the title of Marketing Assistant (*Id.*). She also asserts that her job responsibilities were altered,[10] her participation in several Company committees were terminated[11] and her attendance at professional conventions[12] was no longer permitted (*Id.* at pp. 1–2). Further, she asserts that she was excluded from departmental activities,[13] her job description was drastically modified,[14] and she was excluded "from the information loop"[15] (*Id.* at pp. 3–4). In sum, while it is undisputed that Plaintiff's compensation was not reduced,[16] Plaintiff

contends that all of these acts by White constituted a demotion.

Plaintiff's remaining complaints in this lawsuit involve her dissatisfaction with the treatment she received subsequent to her complaint of gender discrimination to the Company, i.e., her allegations of retaliation. On March 7, 2001, Plaintiff met with Mike Polis (hereinafter "Polis"), the Company's Human Resources Manager. At that time, Plaintiff complained that White was treating her differently because of her gender. A month later, on April 4, 2001, Plaintiff received three separate memoranda from White, two dated April 4, 2001, and the third dated March 8, 2001, which criticized Plaintiff for insubordination.[17] The memoranda did not discipline or

**10.** For instance, Plaintiff avers that

Prior to August 2000, [she] met quarterly with the Company's consultant, Mohon Reddy, to discuss strategy, plans and approaches to the market; subsequent to that time, [she has] not been permitted to meet with Mr. Reddy.
(Cantrell Aff.).

**11.** For example, Plaintiff contends that

Prior to August 2000, [she] was a member of several Company committees, positions which carried prestige within the [Company]. ... [she] had been a member of the Product Management Committee since 1995. [Stan] was [her] backup in that position. On or about January 15, 2002, [she] was removed from that committee.
(Cantrell Aff, pp. 1–2).

**12.** For instance, Plaintiff asserts that

[she] regularly attended between four and eight trade shows per year to either staff the [Company's] booths or perform product research functions. [She has] not been permitted to attend a trade show since August 2000. All males in [her] department have been permitted to attend trade shows since that time.
(Cantrell Aff., p. 2).

**13.** Plaintiff asserts that

in the Summer of 2002, [White] held a party for Kevin Jones in connection with

Jones' wedding. [She] was not invited. All males in the department were invited.... (Cantrell Aff., p. 3).

**14.** Plaintiff avers that "[a]fter [she] returned to work in August 2000, following [White's] appointment to Marketing Manager, [her] job description reflected diminished duties and responsibilities" (Cantrell Aff., p. 3).

**15.** Plaintiff contends that

Prior to August 2000, [she] had regular interaction with other members of the staff, and [she] was in the same email group, Mkinternal(4) ... [She is] no longer on the list to receive regular informational updates, although the males in the department still receive the group email, as [she knows] from regularly seeing the printouts. [She] is now emailed separately.
(Cantrell Aff., pp. 3–4).

**16.** The evidence indicates that Plaintiff continually received pay increases which placed her at the maximum pay rate for her position (White Aff., ¶ 20).

**17.** The evidence indicates that these three memoranda did not affect the Plaintiff's pay and and benefits. Moreover, she was not placed on probation, suspended or otherwise disciplined as a result of these memoranda (Polis Aff., ¶ 19).

threaten to discipline Plaintiff as a result of her alleged insubordination; however, the negative performance memoranda were placed in Plaintiff's personnel file. Plaintiff, in response, wrote three rebuttal memoranda and said memoranda were also placed in Plaintiff's personnel file.

Subsequently, according to Plaintiff, her duties changed. She was no longer assigned marketing research projects, but instead was directed to "print out letters, proofread documents, and perform other clerical duties" (Cantrell Aff., p. 4). Plaintiff also avers that her position was improperly modified because she no longer reported directly to White, but instead, reported directly to Stan.[18] Moreover, in the Fall of 2001, Plaintiff began composing presentations using Corel Presentations, although she had not received adequate training or tools for the presentations. Further, in connection with her duties, Plaintiff asked to acquire certain computer software and receive training classes on certain computer programs. Notwithstanding her requests, she did not received the software or training. Finally, Plaintiff asserts that she is treated adversely in matters relating to sick leave.[19]

## C. Procedural History

On June 12, 2001, Plaintiff filed a written charge with the Equal Employment Opportunity Commission (hereinafter "EEOC") alleging gender discrimination and retaliation (Compl.Ex. A). On September 27, 2001, the EEOC issued a favorable ruling for the Company and mailed to Plaintiff a right to sue letter (Compl., Ex. B).

On December 4, 2001, Plaintiff timely filed this Title VII[20] action alleging one count: gender discrimination and retaliation (Doc. # 1, Compl.).[21] Plaintiff seeks a trial by jury, compensatory and punitive

---

18. Effective June 1, 2001, Stan became Plaintiff's direct supervisor (Polis Aff., ¶ 22). Stan, Jones and Alexander continued to report directly to White.

19. According to Plaintiff,

 [e]xempt employees, such as [Alexander] and [her], do not accrue a certain number of personal/sick days per year as do hourly employees. When [she] wanted to take a personal/sick day for [her] son's ear surgery in April 2001, [she] was informed by White that [she] would have to take it as a vacation day.... To [her] certain personal knowledge, [Alexander] took a day off for his child's ear surgery on December 19, 2001, and one-half day [sic] off for the same thing on June 24, 2002, with the knowledge of the employer and without having to claim a vacation day.

 (Cantrell Aff., pp. 4–5).

20. Title VII makes it "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

21. To the extent a hostile work environment claim is alleged in Plaintiff's EEOC Charge, the court notes that a hostile work environment claim is not alleged in Plaintiff's Complaint, nor is such a claim argued in Plaintiff's opposition to Defendant's Motion for Summary Judgment. There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment; the onus is on the parties to formulate arguments. *See, e.g. Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.), *cert. denied*, 516 U.S. 817, 116 S.Ct. 74, 133 L.Ed.2d 33 (1995); *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir.1990), *reh'g denied*, 921 F.2d 283 (11th Cir.1990); *Chase v. Kawasaki Motors Corp., U.S.A.*, 140 F.Supp.2d 1280, 1286 (M.D.Ala. 2001). Consequently, the court will not address any potential claims for hostile work environment, but will limit its discussion instead to the gender discrimination claims of demotion and retaliation urged by Plaintiff's counsel in the Complaint and in opposition to Defendant's Motion for Summary Judgment.

damages, back pay and interest thereon, front pay, injunctive relief, attorneys' fees, costs, and declaratory relief (Doc. #1, Compl., at p. 5.).

On December 9, 2002, the defendant filed a motion for summary judgment arguing that the court should grant summary judgment against Plaintiff because: (1) any claim of gender discrimination or retaliation which occurred more than 180 days from June 12, 2001 is time-barred, (2) the alleged conduct which Plaintiff asserts is gender discrimination or retaliation does not amount to an "adverse employment action" under controlling law, and (3) Plaintiff lacks evidence to support a timely, viable claim against the defendant (Docs.# 21, 22). Plaintiff filed her response[22] to the motion on December 30, 2002 (Doc. # 26), and on January 16, 2003, Defendant filed a reply (Doc. # 29).

## II. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 42 U.S.C. §§ 2000e to 2000e–17 (Title VII of the Civil Rights Act of 1964 as amended). The parties contest neither personal jurisdiction nor venue.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party.[23] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.1996).

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant either by submitting affirmative evidence negating an essential element of the nonmovant's claim or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element to its claims, and on which it bears the burden of proof at trial. To satisfy this burden, the nonmovant cannot rest on its pleadings, but must, by affidavit or by other means, set forth specific facts showing that there is a genuine issue for trial.

**22.** The court notes that in her rather conclusory response (Doc. # 26), Plaintiff fails to respond to any of the specific arguments Defendant raised in the Motion for Summary Judgment.

**23.** The Supreme Court explained that:
[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citations omitted).

Fed.R.Civ.P. 56(e). If the nonmoving party does not respond to a motion for summary judgment, the court may grant a motion for summary judgment in favor of the moving party, if defendant's presentation is sufficient to justify the court's conclusion. *Id.*

The court's function in deciding a motion for summary judgment is to determine whether there exist genuine, material issues of fact to be tried; and if not, whether the movant is entitled to judgment as a matter of law. *See Dominick v. Dixie Nat'l Life Ins. Co.*, 809 F.2d 1559 (11th Cir.1987). It is substantive law that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also De Long Equip. Co. v. Washington Mills Abrasive Co.*, 887 F.2d 1499 (11th Cir.1989).

When a court considers a motion for summary judgment, it is to refrain from deciding any material factual issues. All evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990). The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v. M/V/Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Consideration of a motion for summary judgment does not lessen the burden on the nonmoving party, i.e., the nonmoving party still bears the burden of coming forth with sufficient evidence on each element that must be proved.[24] *Earley*, 907 F.2d at 1080. *See Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

## IV. DISCUSSION

### A. Timely Filing of EEOC Charge

■ Defendant contends that Plaintiff's gender discrimination in demotion claim is fatally flawed because she failed to file a timely administrative charge with the EEOC (Doc. # 22). The court agrees.

■ Title 42 U.S.C. § 2000e-(5)(e)(1) specifies the prerequisites that a plaintiff must satisfy before filing a private civil action under Title VII. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 2070, 153 L.Ed.2d 106 (2002). According to this provision, "[a] charge . . . shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred[.]" 42 U.S.C. § 2000e-(5)(e)(1). *Accord, Pijnenburg v. West Ga. Health Sys., Inc.*, 255 F.3d 1304, 1305 (11th Cir.), *reh'g denied*, 273 F.3d 1117 (11th Cir.2001) ("It is settled law that in order to obtain judicial consid-

---

**24.** "[I]f on any part of the prima facie case there would be insufficient evidence to require submission of the case to a jury, . . . [the court must] grant summary judgment [for the defendant]." *Earley*, 907 F.2d at 1080 (citations omitted). In *Earley*, the Court of Appeals further emphasized:

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for

the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

\* \* \* \* \* \*

If the evidence is merely "colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted) (emphasis added); *accord Hudson v. Southern Ductile Casting Corp.*, 849 F.2d 1372, 1376 (11th Cir.1988). *Earley*, 907 F.2d at 1080–81.

eration of a [Title VII] claim, a plaintiff must first file an administrative charge with the EEOC within 180 days after the alleged unlawful employment practice occurred."). This requirement guarantees "the protection of civil rights laws to those who promptly assert their rights" and "also protects employers from the burden of defending claims arising from employment decisions that are long past." *Delaware State Coll. v. Ricks,* 449 U.S. 250, 256–57, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980).

■■■■ The Supreme Court has noted that "strict adherence" to this procedural requirement "is the best guarantee of evenhanded administration of the law." *Mohasco Corp. v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). By choosing this relatively short deadline, "Congress clearly intended to encourage the prompt processing of all charges of employment discrimination." *Id.* Indeed, this procedural rule, is not a mere technicality, but an integral part of Congress'

statutory scheme that should not "be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). Thus, if a plaintiff fails to file an EEOC charge before the 180–day limitations period, the plaintiff's subsequent lawsuit is barred and must be dismissed for failure to exhaust administrative remedies. *See, e.g., Brewer v. Alabama,* 111 F.Supp.2d 1197, 1204 (M.D.Ala.2000).

In this case, Plaintiff filed her EEOC charge on June 12, 2001. Therefore, the charge is timely only if the unlawful employment actions of which she complains "occurred" on or after December 14, 2000. *See, Morgan,* 122 S.Ct. at 2070 (holding that a party must file an EEOC charge within 180 days from the date the unlawful act occurred or lose the ability to recover for it).

Of the various unlawful employment actions[25] alleged by Plaintiff, the demotion claims[26] clearly fall outside the 180–day

---

**25.** For purposes of addressing the timing issue, the court has assumed that all of Defendant's alleged discriminatory acts would constitute "unlawful employment actions" under Title VII.

**26.** To the extent that *any* allegations in Plaintiff's Complaint involve claims other than the claims of demotion and retaliation, the court finds that these other claims, which receive separate consideration below, are also time-barred. Plaintiff's Complaint includes a claim involving the hiring of Stan as a Marketing Analyst at a higher rate of pay than Plaintiff's rate of pay.

> Mario Stan, a male, was placed in the position of marketing analyst in 1998, the position previously held by the Plaintiff. The job duties for the Plaintiff and Stan were the same, however, Stan's salary was approximately $12,000 more per year than Plaintiff was paid.
> Stan was placed in that position despite Plaintiff's previous performance and experience in that position. Stan was less quali-

fied for the position of analyst than was Plaintiff.

(Compl., ¶s 12, 13). Because Stan was hired in 1998, this claim *clearly* is time-barred and cannot proceed under Title VII for failure to exhaust administrative remedies. Further, Plaintiff's Complaint includes a claim that she was prohibited from applying for an advertised "Product Development Manager" position.

> The Defendant advertised in the newspaper for the position of product development manager. When Plaintiff inquired about the position with the human resources department and Steve Chromey, she was told that she could not apply for the position and that they would not discuss the reason with her. Plaintiff was not allowed to apply for the position.

(Compl., ¶ 16). Because the evidence indicates that this "prohibition" occurred in August 2000, (*See* Chromey Aff., ¶ 15), this claim is also time-barred and cannot proceed under Title VII. Consequently, the court need not further address these claims.

period between December 14, 2000 and June 12, 2001.[27] More specifically, the Plaintiff asserts that these acts of demotion occurred prior to August 2000 *or* in August 2000:(1) her change in job title, (2) the relocation of her office, (3) her membership in several Company committees, (3) her job duties, (4) her attendance at trade shows, (5) the significant alteration to her job description, (6) the decrease in her trips to job sites for field research purposes, (7) her exclusion from departmental activities, and (8) her exclusion from the information loop (Cantrell Aff.). In addition, Plaintiff asserts that the remaining act of demotion occurred in October 2000: her participation in the biennial convention of the American Society of Plumbing Engineers (*Id.*). Because Plaintiff did not file her EEOC charge "within one hundred and eighty days after the[se] alleged unlawful employment practice[s] occurred," she cannot maintain an action under Title VII to seek redress for these actions. 42 U.S.C. § 200e–5(e)(1). Accordingly, Plaintiff's claims under Title VII for gender discrimination in demotion cannot proceed due to a failure to exhaust administrative remedies.

In sum, Plaintiff's failure to file a timely Charge of Discrimination with the EEOC precludes her from bringing her demotion claims pursuant to Title VII. For this reason, Defendant is entitled to summary judgment on Plaintiff's Title VII gender discrimination claims relating to her demotion. Plaintiff's remaining Title VII claim of retaliation is addressed below.

*B. Plaintiff's Claims of Retaliation*

Under Title VII, it is an unlawful employment practice for an employer to discriminate against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). Plaintiff alleges that the following acts were retaliation for her March 7, 2001 complaint to Polis regarding White's gender discrimination: (1) a change in her duties, (2) modification of her position because she no longer reported directly to White, but instead, reported directly to Stan, (3) failure to adequately train Plaintiff or provide the tools for her Corel presentations, (4) failure for Plaintiff to receive certain computer software, (5) her adverse treatment in matters relating to sick leave, and (6) placement of negative job performance memoranda in her personnel file.

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court established the allocation of the burden of production and an order for the presentation of proof in retaliation cases. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Under the *McDonnell Douglas* approach, a plaintiff has the initial burden of establishing a prima-facie case of unlawful retaliation by a preponderance of the evidence. 411 U.S. at 802, 93 S.Ct. 1817. A prima-facie case requires "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory [or retaliatory] criterion." *International Broth. of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

The Eleventh Circuit has established broad standards for a prima-facie case of retaliation. An individual alleging retalia-

---

**27.** Defendant does not dispute that Plaintiff's retaliation claims were timely presented to the EEOC.

tion under Title VII must establish her prima-facie case by demonstrating "(1) that she engaged in statutorily protected activity, (2) that an adverse action occurred, and (3) that the adverse action was causally related to [her] protected activities." *Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1074 (11th Cir.1995). "The causal link element is construed broadly so that 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" *Pennington v. City of Huntsville*, 261 F.3d 1262 (11th Cir.2001) (citations omitted).

If the plaintiff establishes a prima-facie case of retaliation, the burden then shifts to the employer to rebut the presumption by articulating legitimate, non-retaliatory reasons for its employment action. *Holifield v. Reno*, 115 F.3d 1555, 1564(11th Cir.1997). "This intermediate burden is 'exceedingly light.'" *Id.* (citing *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir.1994)). The employer has the burden of production, not of persuasion, and thus does not have to persuade a court that it was actually motivated by the reason advanced. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 253–255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Once the employer satisfies this burden of production, "the presumption of [retaliation] is eliminated and 'the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima-facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Chapman v. AI Transport*, 229 F.3d 1012, 1024

(11th Cir.2000) (citations omitted). The establishment of a prima-facie case does not in itself entitle a plaintiff to survive a motion for summary judgment. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir.1987); *Pace v. Southern Ry. Sys.*, 701 F.2d 1383, 1389 (11th Cir.1983). After an employer proffers non-retaliatory reasons for its actions, "[i]n order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered ... reasons is pretextual." *Chapman*, 229 F.3d at 1037.

### 1. Prima–Facie Case of Retaliation

As aforementioned, to establish a prima-facie case of retaliation, Plaintiff must establish the following: (1) that she engaged in statutorily protected activity, (2) that an adverse action occurred, and (3) that the adverse action was causally related to her protected activities. *See Coutu, supra.* The parties do not dispute that Plaintiff engaged in statutorily protected activity. Defendant, however, argues, among other things, that Plaintiff suffered no adverse employment action (Doc. # 22). The court agrees with the argument proffered by Defendant.

### 2. Adverse Employment Action

 "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir.2000).[28] Whether an employee has suffered an adverse employ-

---

**28.** The court notes that determining whether an employment action is adverse for purposes of Title VII is a matter of federal, not state,

law. *Hinson v. Clinch County, Georgia Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir.2000).

ment action is normally considered on a case-by-case basis. *Id.* at 586. It is clear, however, that not all conduct taken by an employer which causes a negative affect on an employee constitutes adverse employment action. *Davis v. Town of Lake Park, Florida,* 245 F.3d 1232 (11th Cir.2001). There must be "some threshold level of substantiality that must be met for unlawful discrimination to be cognizable." *Wideman v. Wal–Mart Stores, Inc.,* 141 F.3d 1453, 1456 (11th Cir.1998). "This limitation is consistent with the basic principle that Title VII is . . . neither a general civility code nor a statute making actionable for the 'ordinary tribulations of the workplace.'" *Davis,* 245 F.3d at 1239 (quoting *Gupta,* 212 F.3d at 587); *see also Wu v. Thomas,* 996 F.2d 271, 273–274 (11th Cir.1993) (noting that an adverse employment action does not result from every unkind act, even those without economic consequences).

 In *Davis,* the Eleventh Circuit emphasized that for an employment action to be adverse it "must impact the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way." 245 F.3d at 1239. While proof of direct economic consequences is not required in all cases, "the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment." *Id.* Thus, to prove an adverse employment action "an employee must show a *serious and material* change in terms, conditions, or privileges of employment." *Id.* (emphasis in original). In determining whether a "serious and material" change in the terms, conditions, or privileges of employment has been established, *Davis* instructs the court to disregard the plaintiff's subjective view of the significance and adversity of the employer's action: "[T]he employment action must be materially adverse as viewed by a reasonable person in the circumstance." *Id.* (citation omitted).

 In the instant case, Plaintiff claims that the following acts, viewed individually or collectively, amount to adverse employment action: (1) a change in her duties to include clerical work, (2) modification of her position because she no longer reported directly to White, but instead, reported directly to Stan, (3) failure to adequately train or provide the tools for her Corel presentations, (4) failure to receive certain software, (5) adverse treatment in matters relating to sick leave, and (6) placement of negative job performance memoranda in her personnel file.

 This court is convinced that no reasonable person could view these actions, whether individually or collectively, as having a "serious and material change in the terms, conditions, or privileges" of Plaintiff's employment. *See Davis,* 245 F.3d at 1239. A materially adverse employment action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993). Thus, even if Plaintiff proved that her job responsibilities were altered to include clerical work and she was directed to report directly to Stan, instead of White, such actions do not rise above mere "alteration[s] of job responsibilities" when the actions are unaccompanied by any tangible harm, and thus do not constitute an adverse employment action. Moreover, inasmuch as Title VII is not a vehicle to be used by employees to compel their employers to upgrade their technology or training, the court refuses to find that a lack of certain computer software or tools and training for Corel presentations constitutes a materially adverse employment condition. *See Enowmbitang v. Seagate Tech., Inc.,* 148 F.3d 970, 973 (8th Cir.1998) (holding that employer's failure to provide plaintiff with a computer "does not rise above a 'mere inconvenience' and therefore does not constitute an adverse employment action") (internal citation

omitted). Further, considering the complaints of adverse treatment in matters relating to sick leave,[29] for which the court has found no basis in the record, no reasonable person could possibly find these actions, individually or collectively, of sufficient substantiality to merit an "adverse employment action." *See Johnston v. Henderson,* 144 F.Supp.2d 1341, 1359 (S.D.Fla.2001) (held that complaints of, among other things, improper denial of sick leave, unspecified allegations of harassment and "other discriminatory conduct," did not constitute adverse employment action).

Finally, Plaintiff's remaining claim of retaliation is predicated on an employer act that frequently is alleged as adverse employment action even though it does not often meet the statutory threshold: placement of negative job performance memoranda in her file. This very issue was addressed by the Eleventh Circuit in *Davis, supra.* In *Davis,* a police officer alleged that the two job performance memoranda constituted adverse employment actions under Title VII. The police officer argued that the memoranda were "unwarranted, diminished his prestige and self-esteem, and potentially ... [interfered] with future job prospects." *Davis,* 245 F.3d at 1240. The Eleventh Circuit noted that neither of the memoranda caused the police officer economic injury and, therefore, were not adverse employment actions. *Id.* The Court observed that "courts are wisely reluctant to treat job performance memoranda as actionable under Title VII where they do not trigger any more tangible form of adverse action such as loss of benefits, ineligibility for promotional opportunities, or more formal discipline." *Id.* at 1241. The Court elucidated the following:

> Given that Congress in § 2000e–2(a) has expressly limited the types of employer actions which may give rise to a Title VII discrimination claim, such a claim rarely may be predicated merely on an employer's allegedly unfounded criticism of an employee's job performance, where that criticism has no tangible impact on the terms, conditions, or privileges of employment. An employee who re-

---

**29.** Specifically, Plaintiff complains of *only* one occurrence in which she was allegedly treated adversely in relation to sick leave:

> When [she] wanted to take a personal/sick day for [her] son's ear surgery in April 2001, [she] was informed by White that [she] would have to take it as a vacation day.... To [her] certain personal knowledge, [Alexander] took a day off for his child's ear surgery on December 19, 2001, and one-half day off for the same thing on June 24, 2002, with the knowledge of the employer and without having to claim a vacation day.

(Cantrell Aff., pp. 4–5). The court finds that this *one* occurrence, even if proved, is insufficient to constitute a "serious and material change in the terms, conditions, or privileges of [Plaintiff's] employment." *See Davis, supra.* Moreover, even if the court *assumed arguendo* that this *one* occurrence constituted a "serious and material change in the terms, conditions, or privileges of [Plaintiff's] employment" sufficient to establish an adverse

employment act, Plaintiff has provided *no* evidence of pretext. White states that

> [he] made a judgment call in March 2001 when [Plaintiff] asked for yet another day off in April for personal reasons to have her take a vacation day. She had taken off a large number of days for various personal reasons since her return to work at the end of July 2001, far more than any other employee in [the] department.

(Doc. # 29, Ex. B, White Aff., ¶ 17). Hence, Defendant has proffered its non-retaliatory reason for its actions. Plaintiff, on the other hand, has failed to produce *any* evidence for a reasonable factfinder to conclude that this proffered reason is pretextual. *See Chapman, supra.* ("[i]n order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered ... reasons is pretextual."). Accordingly, the court concludes that summary judgment is warranted on this claim.

ceives criticism or a negative evaluation may suffer a loss of self-esteem and conceivably may suffer a loss of prestige in the eyes of others who come to be aware of the evaluation. But the protections of Title VII simply do not extend to 'everything that makes an employee unhappy.' (citation omitted) ... Employer criticism, like employer praise, is an ordinary and appropriate feature of the workplace. Expanding the scope of Title VII to permit discrimination lawsuits predicated only on unwelcome day-to-day critiques and assertedly unjustified negative evaluations would threaten the flow of communication between employees and supervisors and limit the employer's ability to maintain and improve job performance. Federal courts ought not be put in the position of monitoring and second-guessing the feedback that an employer gives, and should be encouraged to give, an employee. Simply put, the loss of prestige or self-esteem felt by an employee who receives what he believes to be unwarranted job criticism or performance review will rarely-without more-establish the adverse action necessary to pursue a claim under Title VII's anti-discrimination clause.

*Id.* at 1242. In turn, the Court held that the supervisor's filing of the negative job performance memoranda fell short of constituting an adverse employment action. *Id.*

In this case, the evidence indicates that none of the memoranda at issue caused Plaintiff any present or foreseeable future economic or tangible injury. There is no evidence, for example, that the contents of the memoranda were disclosed to other employees or supervisors. There is also no evidence that, because of the content of the memoranda, Plaintiff was subjected to any change in the terms and conditions of

her employment. Moreover, it is undisputed that Plaintiff was not placed on probation, suspended, subjected to a loss of pay or benefits, or otherwise disciplined as a result of the memoranda (Polis Aff., ¶ 20). In fact, since the negative performance memoranda was placed in her personnel file, Plaintiff has received two pay raises and two performance appraisals rating her job performance as "satisfactory" or "better" (Stan Aff., ¶s 15–18, Ex. 3–4; White Aff., Ex. 9). These actions suggest that the negative performance memoranda did not have a material impact on the terms and conditions of Plaintiff's employment. Furthermore, Plaintiff wrote rebuttal memoranda in opposition to the negative performance memoranda and her memoranda were *also* placed in her personnel file (Polis Aff., ¶ 18). Hence, any potential future prejudice which could arise from the negative performance memoranda is countered by Plaintiff's rebuttal memoranda in her personnel file. In turn, the court concludes that, based upon the evidence before it, Plaintiff cannot show any tangible consequences from the negative performance memoranda, and thus the act of placing the memoranda in her personnel file falls short of constituting an adverse employment action. *See Davis, supra.*

Consequently, because adverse employment action is an indispensable element of a Title VII plaintiff's case, Plaintiff's failure to present sufficient evidence for a reasonable jury to find that this element was met is fatal to her case. *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir.1998) ("Although a plaintiff's burden in proving a prima facie case is light, summary judgment against the plaintiff is appropriate if he fails to satisfy any one of the elements of a prima facie case.") (citations omitted).[30] Accord-

---

**30.** Because the court finds that Plaintiff failed to prove adverse employment action, her Title

ingly, and finding no material issues of fact or law in existence, summary judgment on Plaintiff's retaliation claim is warranted.

## V. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the defendant's motion for summary judgment (Doc. # 21) is GRANTED. Further, the Clerk of the Court is DIRECTED to remove the above-styled case from the trial docket.

A separate final judgment will be entered in accordance with this Memorandum Opinion and Order.

VII retaliation claim fails on that basis alone, and the court need not reach the Defendant's alternative arguments asserted in the Motion for Summary Judgment.