Claudette PIERRI, Plaintiff,

v.

CINGULAR WIRELESS, LLC, a Delaware limited liability company, Defendant.

No. Civ.A. 1:04–CV–2134–TWT.

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 18, 2005.

---

Stephen M. Katz, Law Offices of Stephen M. Katz, Atlanta, GA, for Plaintiff.

David Richard Kresser, E. Jewelle Johnson, Fisher & Phillips, Atlanta, GA, for Defendant.

## ORDER AND OPINION

THRASH, District Judge.

This is an employment discrimination action. It is before the Court on the Report and Recommendation [Doc. 25] of the Magistrate Judge recommending granting the Defendant's Motion for Summary Judgment [Doc. 21]. After careful review, the Court approves and adopts the Report and Recommendation as the judgment of the Court. The Defendant's Motion for Summary Judgment [Doc. 21] is GRANTED.

## JUDGMENT

This action having come before the court, Honorable Thomas W. Thrash, Jr., United States District Judge, for consideration of the Report and Recommendation of the Magistrate Judge recommending granting Defendant's Motion for Summary Judgment, and the court having granted said motion, it is

**Ordered and Adjudged** that judgment is entered in favor of the Defendant against the Plaintiff, and the Defendant recover from Plaintiff the costs of this action.

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

WALKER, United States Magistrate Judge.

This case is presently before the Court on Defendant's Motion for Summary Judgment, filed on April 8, 2005. Docket Entry [21]. Plaintiff has not filed a response, and, therefore, the motion for summary judgment is deemed unopposed. *See* Local Rule 7.1B, N.D. Ga. For the reasons set forth more fully below, the undersigned RECOMMENDS that Defendant's Motion for Summary Judgment be GRANTED.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff filed the instant lawsuit on July 22, 2004, alleging that Defendant discriminated against her on the basis of her gender with respect to her pay, subjected her to gender harassment by her supervisor, and ultimately terminated her employment, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). (*See* Compl., Docket Entry [1] ). Plaintiff also alleges state law claims of intentional infliction of emotional

distress, invasion of privacy, and negligent retention. (*See id.*).

Defendant filed the instant Motion for Summary Judgment contending that Plaintiff's Title VII gender pay discrimination claims fail as a matter of law because it is untimely. Alternatively, Defendant argues that Plaintiff cannot make out a *prima facie* case of gender discrimination because she cannot show that she was paid less than similarly-situated male employees who performed the same job, nor is there evidence of any evidence of pretext. Defendant also contends that Plaintiff's Title VII claim for wrongful termination fails as a matter of law because Plaintiff cannot show that any similarly-situated male employees had nearly identical violations of the corporate credit card and expense reporting policies, as did Plaintiff, but were not terminated. Likewise, Plaintiff cannot show pretext because Plaintiff admitted that she failed to timely submit her expense reports and, although she alleges that her supervisor, Richard Murray, harbored gender animus toward her, Human Resources, not Mr. Murray, was responsible for the decision to terminate Plaintiff's employment. Defendant further contends that Plaintiff's gender harassment claim fails as a matter of law because (1) she cannot show that Mr. Murray committed some of the alleged conduct; (2) she cannot show that the alleged harassment was gender-related and thus Plaintiff cannot show that she was harassed *because of* her sex; and (3) Plaintiff cannot show that the alleged harassment was sufficiently severe or pervasive to create an objectively hostile work environment that affected any term, condition, or privilege of employment.

Defendant also contends that Plaintiff's state law claims fail as a matter of law. Specifically, Defendant contends that Plaintiff cannot establish her claim for intentional infliction of emotional distress because she cannot show that the alleged conduct was sufficiently extreme or outrageous, or that she suffered severe emotional distress. Defendant also contends that Plaintiff cannot establish her invasion of privacy claim because she cannot show any facts supporting a claim for an unreasonable intrusion, which requires a physical intrusion analogous to a trespass, or that there was any unprivileged public disclosure of embarrassing facts about Plaintiff. Lastly, Defendant contends that Plaintiff cannot establish her claim for negligent retention of Mr. Murray because Plaintiff has no evidence that Defendant received complaints that Mr. Murray was harassing other female employees so that Defendant would have been on notice of any gender harassment.

## I. STATEMENT OF FACTS

Plaintiff began working as an agent manager for SBC Communications, Inc. ("SBC") in 1989. (Pl.Dep. p. 18). In 1991, Plaintiff was promoted to general sales manager and handled the national retail division in Chicago, Illinois until 1998. (Pl. Dep. pp. 19–20). In 1998, Plaintiff was promoted to director and relocated to SBC's headquarters in Dallas, Texas. (Pl. Dep. p. 20). In Plaintiff's position in Dallas, she received a salary as well as quarterly commissions and an annual bonus. (Pl.Dep. p. 22). Plaintiff's base salary was $55,000 and her total annual compensation was $133,000. (Pl.Dep. p. 22).

Defendant Cingular is a joint venture formed between SBC Communications, Inc. ("SBC") and BellSouth Corporation in late 2000. (Defendants' Statement of Material Facts as to Which Cingular Contends there is no Genuine Issue to Be Tried (hereinafter "DSMF") ¶ 1).[1] At all

---

1. All facts taken from the Defendant's Statement of Material Facts remain undisputed.

times relevant, Defendant maintained an Equal Employment Opportunity ("EEO") Policy that prohibited discrimination and harassment on the basis of gender. (DSMF ¶ 2; *see* Pl. Dep., Ex. 7). Defendant also maintained an anti-harassment policy and complaint procedure for reporting sexual and other types of harassment in the workplace. (DSMF ¶ 3; *see* Adams Decl. ¶ 4, Ex. 2). Plaintiff received a copy of Defendant's Code of Business Conduct, which contained an EEO Policy and harassment complaint procedure. (DSMF ¶ 4).

In December 2000, Plaintiff interviewed with James Flynn, Vice President of National Distribution for Cingular, for a position in Atlanta, Georgia as Director of Prepaid Distribution for the newly-formed Cingular. (DSMF ¶ 7). Plaintiff was offered the position, which she accepted, and began working for Cingular in Atlanta on January 1, 2001. (DSMF ¶ 8; Pl. Dep., Ex. 3; Murray Decl. ¶ 6). Plaintiff reported directly to Ric Murray, Executive Director for Wireless Operations. (DSMF ¶ 9).

At the time Plaintiff moved to Atlanta, the pay structure for personnel from SBC and BellSouth had not been integrated into a formal pay structure for Cingular employees. (DSMF ¶ 10). Unlike Plaintiff's position with SBC in Dallas, she was not paid on a commissioned basis in her new Cingular position in Atlanta. (DSMF ¶ 11). In August 2001, Plaintiff was informed that her base salary would be raised $33,000, from $57,000 to $90,000, and that she would eligible to receive up to a 17% bonus at the end of the year. (DSMF ¶ 12; Pl. Dep., Ex. 2). Plaintiff's compensation package with Cingular eventually was made retroactive to January 1, 2001, the effective date of her promotion.

(DSMF ¶ 14; Pl. Dep., Exs. 2, 3). Plaintiff also was eligible for special ad hoc bonuses in 2001, 2002 and 2003, of $15,000, $10,000 and $5,000 respectively. (DSMF ¶ 13). In March 2002, Mr. Murray gave Plaintiff an outstanding performance evaluation that resulted in another pay increase for Plaintiff. (DSMF ¶ 15). Plaintiff also received a pay increase of about three to four percent in March 2003 as a result of a favorable performance evaluation from Mr. Murray. (DSMF ¶ 16).

In the fall 2002, Defendant began using a web-based expense reporting and reimbursement system called Concur. (DSMF ¶ 17). Employees were required to request reimbursement of all expenses incurred on behalf of Defendant through Concur. Out-of-pocket expenses would be reimbursed directly to the employee and corporate credit card charges would be paid directly to the credit card company. (DSMF ¶ 18; Adams Decl. ¶ 9, Exs. 4, 5). In order for employees to get reimbursed and clear the Concur charges, the employees were required to timely submit accurate expense reports, complete appropriate reimbursement documentation and submit receipts. (DSMF ¶ 18; Adams Decl. ¶ 9, Exs. 4, 5). Monthly credit card statements were sent directly from the credit card company to the employees; if all credit card charges were business-related and expense reports were timely submitted to Concur, these charges would automatically be paid and employees were not required to make any payments to the credit card company. (DSMF ¶ 19; Adams Decl. ¶ 9, Exs. 4, 5). Employees with a delinquent balance on their corporate credit card could be subjected to discipline: accounts that were more than sixty days delinquent were suspended by the

---

This Court must accept as admitted those facts in Defendant's Statement of Material Facts that have not been specifically controverted with citation to the relevant portions of the record by the opposing party. Local Rule 56.1B(2), (3), N.D., Ga.

credit card company, and delinquent balances over ninety days past due could result in Defendant terminating that employee. (DSMF ¶ 20; Adams Decl. ¶¶ 9–10, Exs. 4, 5).

Because Plaintiff traveled for business purposes, she had a corporate credit card for business expenses and was familiar with the policies governing expense reports and Defendant's credit card usage. (DSMF ¶ 21). On March 14, 2003, Concur generated a statement showing that Plaintiff had a number of outstanding charges, for which no paperwork was submitted in order to clear the charges. (DSMF ¶ 22). According to Plaintiff, however, she asked Mr. Murray's administrative assistant, Theresa Wicker, to submit Plaintiff's paperwork to clear the charges, but Ms. Wicker failed to do so. (DSMF ¶ 23).

In May 2003, Plaintiff became aware that her corporate credit card balance was over $1,500 and that it was past due. (DSMF ¶ 24). Plaintiff was aware that, if she failed to pay the balance or otherwise clear the charges, her corporate credit card would be cancelled. (DSMF ¶ 24). In June 2003, Plaintiff became aware that her corporate credit card had been cancelled because of an overdue balance that had not been paid. (DSMF ¶ 25). In mid-July 2003, both Plaintiff as well as Human Resources, received notification from the accounting system that she had a corporate credit card balance over $1,500 that was more than 120 days past due. (DSMF ¶ 26; Pl. Dep., Ex. 10). Although $1,500 was more than 120 days past due, the balance on Plaintiff's corporate credit card at that time was in excess of $4,000. (Adams Decl. ¶ 10; Pl. Dep. pp. 155–56). At least three expense reports were at issue. (Adams Decl. ¶ 10). Under Defendant's policy, an employee may be terminated for failure to timely submit expense reports and for having credit card balances in excess of ninety days past due. (Adams Decl. ¶ 10, Ex. 4 § 10.1, Ex. 5 §§ 1.4, 2.1; see Pl. Dep., Ex. 10).

On July 29, 2003, Defendant's Human Resources Managers, Karen Adams and James Booth, after consulting with Defendant's ethics department, made the decision to terminate Plaintiff's employment for violating the corporate credit card and expense reporting policies. (DSMF ¶ 27). Mr. Murray did not recommend or encourage Plaintiff's termination, however, he was present when Ms. Adams met with Plaintiff to terminate her employment. (Adams Decl. ¶ 11; Murray Decl. ¶¶ 16–17). Between January 1, 2003 and July 31, 2004, approximately fifty-six employees, both male and female, were terminated from Cingular for various violations of Cingular's expense reimbursement and credit card policies. (Adams Decl. ¶ 13). At least nine of those individuals had delinquent credit card balances that were at least ninety days past due. (Adams Decl. ¶ 13).

Approximately one month after Plaintiff was terminated, on August 27, 2003, Plaintiff sent Human Resource Manager Adams a letter enclosing six individual expense reports in attempt to clear charges to her corporate and personal credit card, including expenses that had appeared more than five months earlier on her March 14, 2003 Concur statement. (DSMF ¶ 28; Pl. Dep., Ex. 1). On November 19, 2003, Plaintiff filed an EEOC Charge of Discrimination alleging that Defendant discriminated against her on the basis of her sex and age.[2] (DSMF ¶ 29).

## II. CONCLUSIONS OF LAW

### A. Summary Judgment Standard

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories and admissions

---

2. Additional facts will be provided as deemed necessary in the analysis that follows.

on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). At the summary judgment stage, the court must examine all evidence in the light most favorable to the non-moving party and resolve all reasonable doubts in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Pipkins v. City of Temple Terrace,* 267 F.3d 1197, 1199 (11th Cir.2001).

On a motion for summary judgment, "the moving party bears the initial burden to show, by reference to materials on file, that there are no genuine issues of material fact to be determined at trial." *Mullins v. Crowell,* 228 F.3d 1305, 1313 (11th Cir.2000) (citing *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991)). Once the movant has shown the non-existence of any genuine issue of material fact, it is up to the Plaintiff to produce some evidence in support of his claim. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Mere conclusory allegations of discrimination or harassment are not enough to withstand a motion for summary judgment. *Carter v. City of Miami,* 870 F.2d 578, 585 (11th Cir.1989). In other words, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. An issue is not genuine if it is unsupported by evidence or if it is created by evidence that is "merely colorable" or "not significantly probative." *Id.* at 250, 106 S.Ct. 2505. Likewise, a fact is only material if it is so designated by controlling substantive law as an essential element of Plaintiff's case. *Id.* at 248, 106 S.Ct. 2505.

If neither party can prove the existence or nonexistence of an essential element of a claim, summary judgment will be granted if the movant shows that the Plaintiff will be unable to meet her burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant's burden therefore requires a " 'showing'—that is, pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* The nonmovant's failure to offer proof of an essential element to her case renders all facts immaterial, thus entitling the movant to judgment as a matter of law. *Id.* at 323, 106 S.Ct. 2548.

## B. *Plaintiff's Title VII Pay Claim*

Plaintiff asserts that Mr. Murray discriminated against her based on her gender with respect to her compensation package when she moved to Atlanta to work for Defendant in January 2001. (Compl.¶¶ 9–11). Defendant contends, however, that Plaintiff's claim is time barred because she did not file an EEOC charge of discrimination within 180 days of the act of discrimination. Defendant also contends that the claim fails on its merit because Plaintiff cannot show that she was paid less than similarly-situated male employees who performed the same job, nor can she show pretext for gender discrimination with respect to her compensation.

Before filing a private civil action under Title VII or the ADA, a plaintiff must satisfy certain statutory prerequisites such as timely filing a charge of discrimination with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred[.]" 42 U.S.C. § 2000e–5(e)(1); *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *Pijnenburg v. West Ga. Health*

*Sys., Inc.*, 255 F.3d 1304, 1305 (11th Cir.), *reh'g denied*, 273 F.3d 1117 (11th Cir. 2001). "[I]f a plaintiff fails to file an EEOC charge before the 180–day limitations period, the plaintiff's subsequent lawsuit is barred and must be dismissed for failure to exhaust administrative remedies." *Thomas v. Alabama Council on Human Relations, Inc.*, 248 F.Supp.2d 1105, 1114–16 (M.D.Ala.2003) (citing *Brewer v. Alabama*, 111 F.Supp.2d 1197, 1204 (M.D.Ala.2000)). The timely filing of an EEOC charge, however, "like a statute of limitations, is subject to waiver, estoppel and equitable tolling." *Forehand v. Florida State Hosp. at Chattahoochee*, 89 F.3d 1562, 1570 n. 17 (11th Cir.1996) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)); *see also Fouche v. Jekyll Island–State Park Auth.*, 713 F.2d 1518, 1525 (11th Cir.1983) ("[A]ll Title VII procedural requirements to suit are henceforth to be viewed as conditions precedent to suit rather than as jurisdictional requirements."); *Pinkard v. Pullman–Standard*, 678 F.2d 1211, 1216 (5th Cir. Unit B 1982) ("[T]he receipt of a right-to-sue letter is not a jurisdictional prerequisite, but rather is a condition precedent subject to equitable modification."), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983).

■ As the filing of a timely charge is subject to equitable modification, "a limitations period does not start to run until the facts which would support a charge of discrimination are apparent to a person with a reasonably prudent regard for his rights." *Sturniolo v. Sheaffer, Eaton, Inc.*, 15 F.3d 1023, 1025 (11th Cir.1994). A discrete discriminatory act occurs on the day that it happens. *Id.* at 1025; *see also Hill v. Metropolitan Atlanta Rapid Transit Auth.*, 841 F.2d 1533, 1545 (11th Cir. 1988) (holding that "[t]he 180 days begins running from the date the employee knows or should reasonably know that he or she

has been discriminated against"). The limitations period begins to run when the challenged employment decision is made and the employee receives notice of the allegedly discriminatory act, not when the consequences of the decision become painful to the employee. *See, e.g., Delaware State Coll. v. Ricks*, 449 U.S. 250, 257, 259, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Brewer*, 111 F.Supp.2d at 1205.

■ An employee's mere suspicion of discrimination is insufficient to alert a person with a reasonably prudent regard for his rights that he should file a claim. *Sturniolo*, 15 F.3d at 1026. However, it is not necessary for a plaintiff to know all the facts that support his claim in order to file his EEOC charge. *Id.* at 1025 (explaining, for example, that a plaintiff who has successfully performed his position and who is aware that he is being replaced by a person from outside of his protected class knows enough to support filing a claim). Furthermore, "[i]n order for equitable tolling to be justified . . . the facts must show that, in the period more than 180 days prior to the filing of their complaints with the EEOC, [Plaintiff] had no reason to believe that he was the victim of unlawful discrimination." *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1435 (11th Cir.1998); *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 660 (11th Cir.1993). The Plaintiff has the burden of proving that equitable tolling is appropriate. *Ross*, 980 F.2d at 660.

■ Applying the law to the facts of this case, Plaintiff's gender-based claim of pay discrimination is time barred. Here, Plaintiff filed her EEOC charge on November 19, 2003, well over two years after her compensation package was finalized in 2001. (DSMF ¶¶ 12–14, 29). Because Plaintiff did not file her EEOC charge for gender discrimination with regard to her compensation until more than 180 days

after her compensation package was finalized or from when she knew there was a problem with her compensation, such claim is now time barred and must be dismissed for Plaintiff's failure to exhaust her administrative remedies.[3]

### C. *Plaintiff's Title VII Claim for Wrongful Termination based on Gender*

Plaintiff alleges that she was terminated based on her gender. Defendant contends, however, that Plaintiff cannot establish a *prima facie* case of gender discrimination because she cannot show that any similarly-situated male employees engaged in nearly identical misconduct-violations of Defendant's corporate credit card and reimbursement policies-but were not terminated.

Title VII of the Civil Rights Act of 1964 prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Title VII claims require proof of intentional discrimination. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir.1998). Absent direct evidence of discriminatory intent, however, a plaintiff may prove discrimination through circumstantial evidence, thus invoking the *McDonnell Douglas/Burdine* burden-shifting analysis. *See Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1310 (11th Cir.1998), *opinion modified by* 151 F.3d 1321 (11th Cir.1998); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Holifield v. Reno*, 115 F.3d 1555, 1561–62 (11th Cir.1997).

Under the *McDonnell Douglas/Burdine* framework, the plaintiff first has the burden of establishing a *prima facie* case of racial discrimination. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the plaintiff meets this burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089; *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir.2000) (*en banc*). This burden is one of production, not persuasion, and is "exceedingly light." *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir.1994); *Perryman v. Johnson Prod. Co.*, 698 F.2d 1138, 1141 (11th Cir.1983). Thus, "it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 248, 101 S.Ct. 1089; *Jones v. Gerwens*, 874 F.2d 1534, 1538 (11th Cir.1989). The plaintiff will then be given an opportunity to show that the defendant's proffered nondiscriminatory reason was merely a pretext for discriminatory intent. *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089; *Chapman*, 229 F.3d at 1024. In order to survive summary judgment, the plaintiff must show that the defendant lacks credence or that the defendant was more likely motivated by a discriminatory reason than its proffered reason. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir.1996). *See also Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Mere conclusory allegations of discrimination without more, are insufficient to raise an inference of pretext

---

**3.** The Court need not address the merits of Plaintiff's discriminatory pay claim because it

is clear that claim is untimely.

or intentional discrimination where an employer has offered extensive evidence of legitimate, non-discriminatory reasons for its actions. *Mayfield*, 101 F.3d at 1376.

A plaintiff may establish a *prima facie* case of gender discrimination by showing that (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) her employer treated similarly-situated employees outside her class more favorably; and (4) she was qualified to do the job. *Holifield v. Reno*, 115 F.3d at 1562 (citations omitted). In order to satisfy the third prong of this formulation of the *prima facie* case, a plaintiff must present evidence that she was similarly-situated to comparator employees in all relevant aspects. *Holifield*, 115 F.3d at 1562. This involves showing that although "the quantity and quality of the comparator's misconduct [was] nearly identical" to her own misconduct, her comparator received less discipline or was not disciplined at all. *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir.1999); *see also Holifield*, 115 F.3d at 1562; *Nix v. WLCY Radio/Rahall Comm'ns*, 738 F.2d 1181, 1185 (11th Cir.1984). Summary judgment is appropriate when a plaintiff fails to show the existence of a similarly-situated employee and there is no other evidence of discrimination. *Holifield*, 115 F.3d at 1562.

■ Applying the law to the facts of this case, Plaintiff cannot make out a *prima facie* case of gender discrimination with respect to her termination because she cannot show that any similarly-situated male employees were more than 120 days past due by over $1,500 on their corporate credit cards but were not terminated. Plaintiff has no evidence that Defendant retained any other male employee who had "nearly identical" violations of the corporate credit card and expense reporting policies. Moreover, it is undisputed that Defendant terminated many employees, both male and female, for violating Defendant's expense reimbursement and corporate credit card policies. (Adams Decl. ¶ 13). Accordingly, Plaintiff cannot establish a *prima facie* case of gender discrimination.

■ Even if Plaintiff could establish a *prima facie* case of gender discrimination, she cannot show that Defendant's legitimate nondiscriminatory reason for her termination was merely a pretext for unlawful discrimination. Although Plaintiff contends that Mr. Murray's assistant failed to submit her expense reimbursement documentation, Plaintiff had sufficient notice that her credit card balance was past due. (DSMF ¶¶ 22–26; Pl. Dep., Ex. 10). Further, Plaintiff was aware of Defendant's policies requiring employees to complete timely and accurate expense reports and clear their corporate credit card charges through the Concur web-based reporting systems. (DSMF ¶¶ 17–19, 21; Adams Decl. ¶ 9, Exs. 4, 5). Plaintiff also was aware that employees could be disciplined up through and including termination for failing to keep up with their corporate expense accounts. (DSMF ¶ 20; Adams Decl. ¶¶ 9–10, Exs. 4, 5). Moreover, even if Mr. Murray or his assistant harbored some animus toward Plaintiff, it was Defendant's Human Resources managers, not Mr. Murray or his assistant, who made the decision to terminate Plaintiff's employment. (DSMF ¶ 27; Adams Decl. ¶ 11; Murray Decl. ¶¶ 16–17). Accordingly, Plaintiff is unable to show that Defendant's reason for her termination was merely a pretext for gender discrimination.

### D. *Plaintiff's Title VII Gender Harassment Claim*

Plaintiff contends that Mr. Murray subjected her to a hostile work environment by (1) coming up behind her while she worked at her desk and scaring her three or four times a day, then saying, "I love the way you jump" (Pl.Dep. pp. 132–33);

(2) issuing Plaintiff a written warning for using profanity in July 2002 (Pl.Dep. pp. 97–107, Ex. 5); (3) reprimanding Plaintiff in an email for signing a vendor agreement without authorization (Pl.Dep. pp. 137–39); (4) rejecting some of Plaintiff's expense reports unrelated to her termination (Pl. Dep. pp. 140–41); and (5) making a false report to Defendant's ethics hotline in July 2003 that Plaintiff had used marijuana (Pl. Dep. pp. 121–27, 169). Defendant contends that Plaintiff cannot make out a *prima facie* case of gender harassment because Mr. Murray is not responsible for some of the alleged harassing conduct, the alleged harassing conduct is not gender-related, and the conduct is not sufficiently severe and pervasive to create an objectively hostile work environment such that the terms and conditions of Plaintiff's employment were altered.[4]

A defendant is liable under Title VII if the employee has been discriminated against on the basis of sex or gender and that discrimination has created a hostile or abusive work environment. *Meritor Sav. Bank v. Vinson, FSB*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). In order to make out a *prima facie* case of sexual harassment/sexually hostile work environment, a plaintiff must show that (1) that she belongs to a protected group; (2) that she was subjected to unwanted sexual harassment; (3) the harassment complained of was based upon her sex; (4) the harassment complained of affected a term, condition, or privilege of her employment; and (5) a basis for holding the employer liable. *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1257 (11th Cir.2003) (citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir.1999) (*en banc* )); *Henson v. City of Dundee*, 682 F.2d 897, 903–05 (11th Cir.1982).

Defendant first contends that Plaintiff cannot make out the second prong of her *prima facie* case, because Mr. Murray, her alleged harasser, was not responsible for some of the complained of conduct. The Court agrees with Defendant. Specifically, Plaintiff cannot prove that Mr. Murray reported her alleged marijuana usage to Defendant's ethics hotline in July 2003 or that he issued her the written warning in July 2002 for using profanity in violation of Defendant's policy. Mr. Murray did not make the report or issue the warning and Plaintiff has no evidence to the contrary. (Murray Decl. ¶¶ 7, 15). Plaintiff admitted in her deposition that she had no personal knowledge that Mr. Murray called the ethics hotline because the call to the hotline was anonymous, but that she believes that her subordinate, Win Williams, reported her alleged marijuana use to the ethics hotline after Plaintiff admittedly joked with him about using marijuana. (Pl.Dep. pp. 122, 126–27, 169–70). Plaintiff merely speculated that Mr. Murray had persuaded someone to call the ethics hotline for him to report that Plaintiff used marijuana. (Pl.Dep. pp. 169–170). Such speculation and conjecture is insufficient to defeat summary judgment. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir.1990) (mere conclusory allegations are insufficient to overcome a motion for summary judgment). There is likewise no evidence that Mr. Murray was responsible for issuing Plaintiff a written warning in July 2002. To the contrary, the evidence shows, and Plaintiff, herself, testified, that Human Resources received complaints alleging that Plaintiff was using excessive profanity in violation of Company policy, investigated this complaint, interviewed corroborating witnesses, and issued Plaintiff a written warning for using profanity

---

**4.** These arguments were made by Defendant in anticipating the arguments that comprise Plaintiff's claim; Plaintiff, in failing to re-spond to summary judgment has made no such arguments.

in the office on July 17, 2002. (Pl. Dep. pp. 97–111, Ex. 5; Murray Decl. ¶ 7).

■ Based on the foregoing, the only conduct about which Plaintiff complains that can be attributed to Mr. Murray is his allegedly "scaring" her; his email reprimand for signing a vendor agreement without authorization; and his rejection of some of Plaintiff's expense reports unrelated to her termination. Defendant argues, however, that Plaintiff cannot meet the third prong of her *prima facie* case, because none of this conduct is gender-related. The Court agrees.

■ Usually, actionable sexual harassment "involves patterns or allegations of extensive, long-lasting, unaddressed, and uninhibited sexual threats or conduct that permeated the ... work environment." *Gupta v. Fla. Bd. of Regents,* 212 F.3d 571, 586 (11th Cir.2000), *cert. denied,* 531 U.S. 1076, 121 S.Ct. 772, 148 L.Ed.2d 671 (2001) (quoting *Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 264 (5th Cir.1999) (citations omitted)). Consequently, "simple teasing, offhand comments, and isolated incidents unless extremely serious will not amount to discriminatory changes in the terms and conditions of employment." *See Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (explaining that complaints objecting to the ordinary tribulations of the workplace including the sporadic use of abusive language, gender-related jokes, and occasional teasing are not actionable); *Harris v. Forklift Sys.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Further, statements and conduct in support of gender-based hostile work environment claim

> must be of a sexual or gender-related nature–'sexual advances, requests for sexual favors [or] conduct of a sexual nature' ... before they are considered in determining whether the severe or pervasive requirement is met. Innocu-

ous statements or conduct, or boorish ones that do not relate to the sex of the actor or of the offended party are not counted.

*Gupta,* 212 F.3d at 583 (quoting *Mendoza,* 195 F.3d at 1245); *Hudson v. Norfolk S. R.R. Co.,* 209 F.Supp.2d 1301, 1316 n. 19 (N.D.Ga.2001) ("Title VII does not prohibit 'harassment' in and of itself [and] certainly does not prohibit all behavior an employee may find to be unpleasant or annoying."). By way of example, conduct which "ridicules women or treats them as inferior" can constitute gender harassment. *Sims v. Montgomery County Comm'n,* 766 F.Supp. 1052, 1073 (M.D.Ala.1991). However, the plaintiff must prove that her sex or gender was the underlying reason for the alleged harassment she suffered. *Succar v. Dade County Sch. Bd.,* 229 F.3d 1343, 1345 (11th Cir.2000) (holding that the "harassment of [plaintiff] was motivated not by his male gender, but rather by [the harasser's] contempt for [plaintiff] following their failed relationship; [Plaintiff's] gender was merely coincidental").

Applying the law to the facts of this case, the Court finds that Plaintiff cannot establish the third prong of her *prima facie* case for gender harassment because none of the alleged conduct by Mr. Murray was gender-specific or beared any relation to Plaintiff's protected status as a woman. In addition, with the exception of Plaintiff's allegations of Mr. Murray "scaring" her, the alleged harassing conduct appears to be no more than a supervisor disciplining or taking action regarding a subordinate employee because of the employee's work performance, and not the result of her gender. *See Joens v. John Morrell & Co.,* 354 F.3d 938, 941–42 (8th Cir.2004) (holding that there was no evidence that harasser yelled and swore at plaintiff because of her sex, as opposed to her work performance). Plaintiff has put forth no evidence to show that "but for the fact of

her [gender], she would not have been the object of harassment." *Henson*, 682 F.2d at 904. In fact, Plaintiff admitted that she was not subjected to sexual or gender-specific epithets or jokes, offensive or inappropriate comments, or physically threatening behavior.

Q. Did any Cingular manager or supervisor of yours make any negative or derogatory comments or remarks to you about your gender? About you being a woman?

A. Supervisors?

Q. Yeah. Ric Murray? Or Mr. Flynn? Or anyone else?

A. I wouldn't say to that extent, no.

Q. Did any Cingular manager or supervisor make negative or derogatory comments that you heard about other people's gender?

A. No.

Q. Has anybody ever told you that Ric Murray or Mr. Flynn or any other Cingular manager or supervisor made derogatory or negative remarks about your gender? Not that you heard, but somebody told you that they had done that?

A. No.

Q. Did any Cingular manager—Ric Murray, Mr. Flynn—make any sexually suggestive remarks or jokes that you thought were offensive or inappropriate?

A. No.

(Pl.Dep. p. 128).

 Plaintiff believes, however, that Mr. Murray harbored a discriminatory animus toward her because of her gender because Mr. Murray favored the male employees, exemplified by Mr. Murray's failure to (1) criticize the expense reports of Jim Henschel; (2) reprimand Jerry Banks, a male level two manager, for signing vendor contracts without prior approval; or (3) issue a disciplinary warning to Jason

Johnson, a male employee who allegedly became intoxicated during a client meeting. (Pl.Dep. pp. 134–41). None of these allegations, however, are based on Plaintiff's personal knowledge, and instead, are based on inadmissible hearsay, conjecture or speculation, (Pl. Dep. pp. 134–41; Murray Decl. ¶¶ 10–11), which may not be considered on a motion for summary judgment. *See Macuba v. Deboer*, 193 F.3d 1316, 1322–23 (11th Cir.1999) (holding that inadmissible hearsay may not properly be considered on a motion for summary judgment unless it can be reduced to admissible evidence at trial for some purpose) (citing cases); *Pritchard v. S. Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir.1996) (same); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1522 (11th Cir.1995) (holding that a plaintiff may not sustain complaint of hostile work environment on the basis of "statements said to have been made to third parties by fourth parties" where record fails to show when the statements were made, how knowledge of them was acquired, and when plaintiff learned of them). *See also Ratliff v. DeKalb County*, 62 F.3d 338, 341 (11th Cir.1995) ("'[G]iven the ease of pleading cases of discrimination, plaintiffs seeking to avoid summary judgment should be strictly held to the requirements of Rule 56(e); the plaintiff must present specific nonconclusory facts that would support a jury verdict against the particular defendant on discriminatory intent."). Simply stated, Plaintiff has no evidence beyond her subjective belief that her work-related reprimand and the rejection of her expense reports were motivated by gender animus. As such, Plaintiff cannot establish the third prong of her *prima facie* case for gender harassment. *See Bassano v. Hellmann Worldwide Logistics, Inc.*, 310 F.Supp.2d 1270, 1280 (N.D.Ga.2003) ("Plaintiff's personal belief that Defendant unlawfully discriminated against her, no matter how strongly held,

cannot create a genuine issue of pretext when that belief is unsupported by any evidence in the record of age or gender bias.").

■ Defendant also argues that even if all of the alleged conduct can be considered gender harassment as a matter of law, Plaintiff cannot meet the fourth prong of her *prima facie* case. Specifically Defendant argues that the allegedly harassing incidents do not rise to the level of severe and pervasive. The Court agrees.

In order to meet the fourth prong of the *prima facie* case, a plaintiff must demonstrate that the defendant's actions were so severe and pervasive that they altered the terms and conditions of his employment and created an objectively abusive atmosphere. *Edwards v. Wallace Cmty. Coll.,* 49 F.3d 1517, 1521 (11th Cir.1995). A plaintiff must establish a subjective and an objective component: that she perceived the environment as hostile and abusive and that a reasonable person would perceive the environment to be hostile and abusive. *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Mendoza,* 195 F.3d at 1246. Because the plaintiff obviously perceives the environment as hostile and abusive, the relevant inquiry focuses on whether the actions of the defendant altered the working condition to such an extent that a reasonable person would find the atmosphere hostile and abusive. *Harris,* 510 U.S. at 22–23, 114 S.Ct. 367. In making this determination, the courts look at "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23, 114 S.Ct. 367; *see also Mendoza,* 195 F.3d at 1245; *Edwards,* 49 F.3d at 1521–22. However, the courts must also evaluate the severity and pervasiveness of the harassment in the totality of the circumstances; no one factor alone is determinative. *Harris,* 510 U.S. at 23, 114 S.Ct. 367.

Applying the law to the facts of this case, Plaintiff cannot establish the fourth prong of her *prima facie* case because Mr. Murray's alleged conduct was not sufficiently severe or pervasive to establish the existence of an actionable hostile work environment. First, as discussed above, Plaintiff's allegations are not gender-related and therefore cannot be considered in support of a gender harassment claim. *See Gupta,* 212 F.3d at 583; *Mendoza,* 195 F.3d at 1245; *Hudson,* 209 F.Supp.2d at 1316 n. 19. Second, where most, if not all, of the actions complained of are general work matters, a plaintiff cannot, as a matter of law, make out a case for gender harassment. *See Brown v. Brown and Williamson Tobacco Corp.,* Civil Action No. 95–30281–LAC, 1996 WL 325890, at *3 (N.D.Fla. April 11, 1996) (granting defendant's motion for summary judgment on hostile work environment claim because Plaintiff admitted that harasser never made explicit racial or sexual remarks in her presence, and "most, if not all, of the remarks and incidents identified by Brown involve general work matters."), *aff'd* 111 F.3d 896 (11th Cir.1997) (unpublished table decision). *See also Bolden v. PRC, Inc.,* 43 F.3d 545, 551 (10th Cir.1994) ("General harassment, if not racial or sexual, is not actionable.").

Even if the alleged harassment was gender-based, such conduct was not sufficiently severe, threatening or humiliating to create an objectively hostile work environment. *See, e.g., Gupta,* 212 F.3d at 585 (even assuming supervisor stared at plaintiff twice, touched her ring and bracelet once, placed his hand on her knee once, touched the hem of her dress once, and kept asking her to lunch was sexual in nature, conduct was not severe, threaten-

ing, or humiliating); *compare with Cross v. Alabama,* 49 F.3d 1490, 1495, 1497, 1501 (11th Cir.1995) (finding that conduct was severe where a supervisor was very angry and hostile, glared at female employees, pounded on the desk, pointed his finger, threw objects at female employees including a lit cigarette, verbally abused female employees making them cry, and made disparaging comments to females, labeling them as "rather dumb," "stupid," or "just a woman."), and *Watson v. Blue Circle, Inc.,* 324 F.3d 1252, 1262 (11th Cir.2003) (finding that defendant's conduct was severe where he brushed his hand across the plaintiff's buttocks, offered her money to have sex with him, grabbed plaintiff's hand and told her that he wanted to 'eat her', grabbed her by the wrists and shoved her, patted plaintiff's breast, tailgated her, and attempted to throw her in concrete); *Dees v. Johnson Controls World Servs., Inc.,* 168 F.3d 417, 418–19 (11th Cir.1999) (finding that co-workers' conduct was severe when they subjected plaintiff to abuse almost daily for three years and told sexually explicit stories and jokes, commented about plaintiff's body or those of male firefighters, grabbed or slapped plaintiff's buttocks, groped her leg, or otherwise touched her in a sexually suggestive manner).

The conduct alleged in this case, as compared with the cases cited above, only involved isolated incidents that were not physically threatening, humiliating or severe enough to create an objectively hostile work environment. The bare bones of Plaintiff's allegations are simply that Mr. Murray, in his capacity as Plaintiff's supervisor, criticized her work performance or rejected her expense reports for noncompliance with company policy. Job performance criticism from a supervisor or manager is a common vicissitude of life in the working world, even if harsh or unjustified. Specifically,

Employer criticism, like employer praise, is an ordinary and appropriate feature of the workplace. Expanding the scope of Title VII to permit discrimination lawsuits predicated only on unwelcome day-to-day critiques and assertedly unjustified negative evaluations would threaten the flow of communication between employees and supervisors and limit an employer's ability to maintain and improve job performance. Federal courts ought not be put in the position of monitoring and second-guessing the feedback that an employer gives, and should be encouraged to give, an employee. Simply put, the loss of prestige or self-esteem felt by an employee who receives what he believes to be unwarranted job criticism or performance review will rarely—without more—establish the adverse action necessary to pursue a claim under Title VII's anti-discrimination clause.

*Davis v. Town of Lake Park,* 245 F.3d 1232, 1242 (11th Cir.2001) (footnote omitted). Further, as previously discussed, Plaintiff admitted that Mr. Murray did not make any offensive or inappropriate comments about sex or her gender. (Pl.Dep. p. 128). Moreover, none of the alleged harassment manifested itself in a poor performance evaluation, suspension, or in a reduction of pay. (Pl.Dep. pp. 138–39). To the contrary, it is undisputed that Plaintiff received two favorable performance evaluations from Mr. Murray in 2002 and 2003. (DSMF ¶¶ 15–16). Accordingly, because Plaintiff cannot make out the fourth prong of her *prima facie* case of gender harassment, Defendant's motion for summary judgment on that claim should be **GRANTED**.

### E. *Plaintiff's State Law Claims*

#### 1. Intentional Infliction of Emotional Distress

Plaintiff contends that Mr. Murray's gender bias caused her to suffer depres-

sion, stress, and anxiety. (Pl.Dep. pp. 7–11). Defendant contends that Plaintiff cannot make out a claim for intentional infliction of emotional distress because she cannot show that the alleged conduct is sufficiently extreme or outrageous, or that her alleged distress was sufficiently severe.

■■■■■ In order to state a claim for intentional infliction of emotional distress under Georgia law, a plaintiff must show that (1) the conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3)· there is a causal connection between the conduct and the emotional distress; and (4) that the emotional distress is severe. *Bartholomew v. AGL Res., Inc.*, 361 F.3d 1333, 1339 (11th Cir. 2004); *Gaston v. S. Bell Tel. & Tel. Co.*, 674 F.Supp. 347, 352 (N.D.Ga.1987). Whether a claim rises to the requisite level of extremeness and outrageousness is a question of law. *Yarbray v. S. Bell Tel. & Tel. Co.*, 261 Ga. 703, 409 S.E.2d 835, 838 (1991) (citing *Gordon v. Frost*, 193 Ga.App. 517, 388 S.E.2d 362 (1989)). A claim for intentional infliction of emotional distress requires more than an allegation that a plaintiff was offended or insulted. *Kornegay v. Mundy*, 190 Ga.App. 433, 379 S.E.2d 14, 16 (1989). In fact, the burden on a plaintiff is "a stringent one." *Ingram v. JIK Realty Co.*, 199 Ga.App. 335, 404 S.E.2d 802 (1991), *cert. denied*, 199 Ga. App. 906. The conduct must "go beyond all possible bounds of decency, [so as to be] regarded as atrocious, and utterly intolerable in a civilized community." *Nor-folk S. Ry. Co. v. Spence*, 210 Ga.App. 284, 435 S.E.2d 680, 681 (1993).

■■■■ In order for a plaintiff to meet the requisite level of outrageousness and egregiousness, "the conduct must be of such serious import as to naturally give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause *severe* emotional distress." *Mo-*

*ses v. Prudential Ins. Co. of Am.*, 187 Ga.App. 222, 369 S.E.2d 541, 543 (1988) (citing *Bridges v. Winn–Dixie Atlanta, Inc.*, 176 · Ga.App. 227, 335 S.E.2d 445 (1985); *Thomas v. Ronald A. Edwards Constr. Co.*, 163 Ga.App. 202, 293 S.E.2d 383 (1982)). In addition, the *severity* of the mental distress is a factor that the court must consider in determining a defendant's liability because "liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965); *see also Bridges*, 335 S.E.2d at 448.

·■■■■ Applying the law to the facts of this case and construing the evidence in the light most favorable to Plaintiff, the evidence is insufficient to meet the requisite level of egregiousness or outrageousness in order to support a claim for the intentional infliction of emotional distress. The alleged harassing conduct and termination, which presumably comprises Plaintiff's intentional infliction of emotional distress claim, are not so outrageous as to *naturally* give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage and be considered "atrocious, and utterly intolerable in a civilized community." *Turnbull v. Northside Hosp., Inc.*, 220 Ga.App. 883, 470 S.E.2d 464, 466 (1996) (quoting *Yarbrough v. SAS Sys.*, 204 Ga.App. 428, 419 S.E.2d 507 (1992)); *Moses*, 369 S.E.2d at 543 (citing *Bridges*, 176 Ga.App. 227, 335 S.E.2d 445). Generally, Georgia law does not consider adverse employment actions "extreme or outrageous." For example, "a supervisor's responsibilities to oversee the workplace and the employee's obligations to perform her duties [does not make the termination of an employee, for whatever reason, no matter how harsh or insensitive] so extreme as to go beyond all reasonable bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community." *Miraliakbari v. Pennicooke,* 254 Ga.App. 156, 561 S.E.2d 483, 486–88 (2002) (holding that plaintiff could not state a claim for intentional infliction of emotional distress where her supervisor told her that she would be fired if she left work to go care for her injured six-year-old child because this conduct, "while certainly rude ... do[es] not rise to the level of outrageousness necessary to support a claim of intentional infliction of emotional distress"); *See also Mangrum v. Republic Indus., Inc.,* 260 F.Supp.2d 1229, 1256 (N.D.Ga.2003) (granting defendant's motion for summary judgment on plaintiff's intentional infliction of emotional distress claim where alleged harasser exposed his sexual organs to plaintiff, in light of the fact that Plaintiff herself engaged in sexual jokes and banter in the workplace), *aff'd,* 88 Fed.Appx. 390 (11th Cir.2003). Plaintiff likewise has not presented evidence that she suffered "severe" emotional distress. Plaintiff testified that she has been experiencing anxiety, depression and stress as a result of the work harassment and termination. (Pl.Dep. pp. 8–11). Plaintiff also testified, however, that she has not been treated by any doctor, psychologist, psychiatrist, or other healthcare professional, and has not sought counseling for her emotional distress. (Pl.Dep. pp. 12–13). This is insufficient as a matter of law to show that Plaintiff's emotional distress was "severe." *See Gaston,* 674 F.Supp. at 353 (finding that plaintiff's evidence of severity of emotional distress was, at best, "merely colorable" because although she argued that she had seen doctor for headaches, exhaustion and high blood pressure, her doctors suggested that her conditions were typical of either menopause or hereditary tendencies.); *Bridges,* 335 S.E.2d at 448 (holding that plaintiff could not state a claim for intentional infliction of emotional distress because "the symptoms of which she complains are those commonly associated with multiple sclerosis; she acknowledges that she did not consult her physician immediately after the incidents complained of and therefore did not establish the requisite causal connection; and the duration of the allegedly distressful incidents was relatively brief."). Accordingly, Defendants' Motion for Summary Judgment should be GRANTED as to Plaintiff's claim for intentional infliction of emotional distress.

### 2. Invasion of Privacy

Plaintiff contends that Mr. Murray unlawfully invaded her privacy, presumably based on the alleged gender harassment and by calling the ethics hotline and lodging a complaint that Plaintiff smokes marijuana. Defendant argues, however, that there is insufficient evidence to support Plaintiff's invasion of privacy claim.

Georgia law recognizes four related but different invasion of privacy claims: (1) intrusion upon the plaintiff's seclusion or solitude, or into her private affairs; (2) public disclosure of embarrassing private facts; (3) publicity which places the plaintiff in a false light in the public eye; and (4) appropriation of the plaintiff's name and likeness. *Thomas v. Food Lion, LLC,* 256 Ga.App. 880, 570 S.E.2d 18, 21 (2002); *see also Pospicil v. Buying Office, Inc.,* 71 F.Supp.2d 1346, 1361 (N.D.Ga.1999) (citations omitted). Plaintiff alleges a claim under the first category. (*See* Compl. ¶ 38). This cause of action exists to protect the "integrity and sanctity of physical areas a person would naturally consider private and off limits to uninvited, unwelcomed, prying persons." *Cummings v. Walsh Constr. Co.,* 561 F.Supp. 872, 884 (S.D.Ga.1983). To establish a claim of "intrusion," a plaintiff must usually establish that the defendant committed a physical intrusion, analogous to trespass, into the plaintiff's solitude or private affairs. *Id.* (citing *Peacock v. Retail Credit Co.,* 302

F.Supp. 418, 422 (N.D.Ga.1969)); *Ass'n Servs., Inc., v. Smith,* 249 Ga.App. 629, 549 S.E.2d 454, 458–59 (2001). Examples of such an intrusion include

> physical intrusion into a place in which the plaintiff has secluded himself ... the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires ... [or] some other form of investigation or examination into his private concerns, as by opening his ... mail, searching his safe or his wallet, examining his private bank account....

RESTATEMENT (SECOND) OF TORTS § 652B cmt. b (1965).

■ Applying the law to the facts of this case, Plaintiff cannot make out a claim for invasion of privacy. Plaintiff has alleged no facts supporting an unreasonable intrusion tantamount to a trespass. Although Plaintiff did not allege in her Complaint or argue that she can make out a claim for invasion of privacy based on the public disclosure of embarrassing facts-her purported marijuana use-she cannot establish that the complaint was relayed to anyone outside of management who did not have a need to know. (Pl.Dep. pp. 122, 126–27, 169–170). Further, all discussions about the complaint among Defendant's Human Resources personnel and management were privileged communications made in good faith to enforce Defendant's policies and protect its interests. *See* GA. CODE ANN. § 51-5-7. Accordingly, because Plaintiff cannot establish a *prima facie* case of invasion of privacy, Defendant's Motion for Summary Judgment on that claim should be **GRANTED**.

### 3. Negligent Retention and Hiring

Plaintiff contends that Defendant is liable for negligently hiring and retaining Mr. Murray because Defendant received other complaints from female employees about Mr. Murray. Defendant contends, however, that Plaintiff has no personal knowledge of any other complaints made about Mr. Murray, which, in any case, were regarding work-related incidents and not about gender harassment.

■ In order to sustain a claim for negligent retention, a plaintiff must show that the employer knew or should have known of the employee's propensity to engage in the conduct which caused his injury, by proffering evidence that is substantially related to the injury-causing conduct. *Herrin Bus. Prod., Inc. v. Ergle,* 254 Ga. App. 713, 563 S.E.2d 442, 446 (2002) (citing *Tecumseh Prod. Co. v. Rigdon,* 250 Ga. App. 739, 552 S.E.2d 910, 912 (2001)). Therefore, in a workplace harassment case, a plaintiff must show that the employer knew or should have known, in the exercise of reasonable care, of an employee's reputation for harassment, that it was foreseeable that the employee would harass other employees, and nevertheless hired or retained the harassing employee. *Coleman,* 381 S.E.2d at 307; *Cox v. Brazo,* 165 Ga.App. 888, 303 S.E.2d 71, 73, *aff'd,* 251 Ga. 491, 307 S.E.2d 474 (1983). Courts should consider "whether the employer promulgated an express policy discouraging unlawful discrimination, provided a mechanism by which employees could complain, and promptly responded to the complaints." *Coleman,* 381 S.E.2d at 307. Further, "if an ordinarily careful employer acting upon the information furnished could have reasonably discovered that its supervisor was inflicting emotional distress upon its employee, the employer could be found to have negligently retained the supervisor." *Id.* Thus, a negligent retention claim is essentially a derivative claim of an intentional infliction of emotional distress claim. *See Phinazee v. Interstate Nationalease, Inc.,* 237 Ga.App. 39, 514 S.E.2d 843, 846 (1999) (citing *Coleman,* 381 S.E.2d at 307).

■ The Court initially notes that Plaintiff's negligent retention claim is essentially derivative of Plaintiff's Title VII, intentional infliction of emotional distress, and invasion of privacy claims. *See Wynn v. Paragon Sys.,* 301 F.Supp.2d 1343, 1355 (S.D.Ga.2004); *Phinazee,* 514 S.E.2d at 846. Having already determined that Plaintiff cannot state a claim for the intentional infliction of emotional distress because Plaintiff failed to show an injury-severe emotional distress Plaintiff's derivative negligent retention claim must also fail. *See Phinazee,* 514 S.E.2d at 846. That notwithstanding, Plaintiff cannot establish that Defendant knew or should have known of Mr. Murray's propensity to harass female employees because Plaintiff has no personal knowledge of the nature of any work-related complaints about Mr. Murray, relying only on inadmissible hearsay. (Pl.Dep. pp. 62–64, 150–51, 159–64, 174–80). Further, none of the complaints were about gender harassment; instead, the complaints were investigated by Human Resources and determined to be mere work-related incidents, such as the closing of Defendant's Michigan office and a 2003 performance evaluation. (Pl. Dep. pp. 62–64, 150–51, 159–64, 174–80; Adams Decl. ¶ 14). Because the alleged harassing conduct toward Plaintiff is unrelated to the type of conduct complained of earlier, Defendant was not put on notice of Mr. Murray's alleged propensity for gender harassment. *Alpharetta First United Methodist Church v. Stewart,* 221 Ga.App. 748, 472 S.E.2d 532, 536 (1996) (citing *Mountain v. Southern Bell Tel., etc., Co.,* 205 Ga.App. 119, 421 S.E.2d 284 (1992), for the proposition that in order to state a negligent retention or hiring claim, a plaintiff must show that her employer knew of the particular propensities which caused the alleged injury). Accordingly, Defendant's Motion for Summary Judgment should be **GRANTED** as to Plaintiff's negligent hiring and retention claim.

### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Defendant's Motion for Summary Judgment be **GRANTED.** Docket Entry [21]. As this a is a final Report and Recommendation, the clerk is **DIRECTED** to terminate the reference to the undersigned.

**SO REPORTED AND RECOMMENDED.**